In the Matter of the Arbitration between **SUPERIOR SHIPPING COMPANY,** owners of the S.S. ASPRONISOS, Petitioner,

and

**TACOMA ORIENTAL LINE, INC., as Charterers under Charter Party dated April 11, 1966, Respondent.**

**No. 66 Civ. 3787.**

United States District Court
S. D. New York.
April 18, 1967.

Poles, Tublin, Patestides & Stratakis, by Theodore P. Daly, New York City, for petitioner.

Bigham, Englar, Jones & Houston, by Sheldon A. Vogel, New York City, for respondent.

CANNELLA, Justice.

Proceeding to compel the respondent to proceed to arbitration, is dismissed.

This proceeding came before this court as a motion on December 20, 1966. Since there was a serious question concerning the existence of a written contract containing the arbitration clause upon which the petitioner relies, the court, on February 1, 1967, pursuant to 9 U.S.C. § 4 ordered an immediate trial of this issue. The trial commenced on February 3, 1967 and was continued until February 27, 1967, at which time the taking of evidence was completed and decision was reserved.

The facts, as adduced from all of the credible evidence produced at the trial, are not complicated. Respondent, Tacoma Oriental Line, Inc., in the latter part of March 1966, was seeking a vessel to transport a cargo of lumber and wood products from the west coast of the United States to the Far East. It engaged Seaport Shipping, a West Coast chartering broker, to procure a vessel and it in turn engaged Miral Marine Corp. in New York. Mr. Miral represented Miral Marine Corp. in the subsequent negotiations.

At about the same time the petitioner, Superior Shipping Corp., had a vessel, the S.S. Aspronisos, available which it was seeking to charter. Northern Ships Agency, Inc., whose president was Mr. Triandafilou, was its agent. Mr. Triandafilou was also the attorney-in-fact for the petitioner. He engaged Simpson, Spence & Young, chartering brokers, to handle negotiations. During the subsequent negotiations Simpson, Spence and Young were represented by Mr. Joseph C. Savage and Mr. Triandafilou also dealt directly with Mr. Miral.

For several weeks prior to April 11, 1966, Messrs. Triandafilou, Savage and Miral conducted negotiations by telephone. During these negotiations and at least one week prior to the oral fixture, Mr. Miral submitted a "pro forma" charter party to Messrs. Triandafilou and Savage which served as the basis for the negotiations. He also requested a capacity plan of the vessel, which was furnished to him and which he immediately forwarded to Seaport.[1]

Finally, on April 11, 1966 the parties arrived at an oral fixture and Mr. Miral

1. It should be noted that this capacity plan indicated the cargo capacity of the vessel as 1,067,686 cubic feet without indicating whether it was a grain or bale measurement.

orally confirmed this fixture with his principal on the West Coast.

At this point, time became a critical factor. The vessel was to tender on the West Coast within the next two days and the charter party had to be sent to the West Coast for signing. Therefore, the normal procedure of following an oral fixture with a fixture note or memo was waived and Mr. Miral proceeded to draw up the charter-party dated April 11, 1966.

On April 12, 1966 at about 11:00 A.M. the original charter party was delivered, by hand, to Mr. Triandafilou. At about noon of the same day Mr. Triandafilou called Mr. Miral and informed him that there were some typographical errors in the charter party and that "grain" capacity should be substituted for "bale" capacity. He further advised Mr. Miral that he was returning the charter party signed, but that Mr. Miral was to make the corrections indicated. Mr. Miral informed Mr. Triandafilou that he understood the basis of the oral fixture to have been "bale" capacity, but that he would make the change subject to being rechanged by the respondent. Mr. Miral further advised Mr. Triandafilou that he would call the respondents and inform them of this change and the credible evidence indicates that he at least called Seaport and informed it of the change before he left for the West Coast the next morning.

On April 13, 1966, Mr. Miral arrived in Portland, Oregon and delivered the charter party, with the changes made, to a representative of Seaport who immediately air freighted it to the respondent at Seattle, Washington. At the time he delivered the charter party to Seaport, he mentioned the changes to one of its representatives.

At about 8:00 A.M. on April 13, 1966 the vessel was tendered. Alexander Bremner, Jr. respondent's treasurer, boarded the vessel at about 8:45 A.M. on April 13, 1966 and discovered pipe railing instead of solid bulwarks, a large generator and anchor windglass on deck, and grain nets in the holds, all of which limited his loading capacity. He immediately notified the owner's port captain and its West Coast agent that the vessel was not as represented to him and listed his objections. After listing his objections, he signed the Statement of Readiness.

Mr. Miral first learned of the respondent's objections on April 14 or April 15, 1966, while in Seaport's office. At that time he called Mr. Triandafilou and reported the objections, but said he would not make a complaint until the respondent had waited to see how the ship loaded. On April 15, 1966 he advised Mr. Bremner to delay a few days in signing the charter party and see how the vessel loaded and then if he was unsatisfied, to sign under protest.

On April 20, 1966 the respondent sent a letter to Seaport listing the aspects in which the vessel failed to comply with the oral fixture. A copy of this letter was sent to Simpson, Spence and Young and it subsequently forwarded a copy to Mr. Triandafilou.

On April 21, 1966 Mr. Bremner attached clause 58, containing the major areas in which the respondent claimed the vessel failed to comply with the oral fixture, and then signed his name conditioning his signature on the charter party as modified. This was sent to Mr. Miral and Mr. Triandafilou received it on April 26, 1966. Mr. Triandafilou, on seeing clause 58, returned the charter party to Simpson, Spence and Young under cover of a letter dated April 26, 1966 which demanded elimination of said clause.

Subsequently Mr. Miral received a letter from Simpson, Spence and Young dated May 5, 1966, advising him that the owners repudiated the charter party with clause 58. The respondent also received a letter dated May 6, 1966 from Northern advising it that the Charter party with clause 58 "stands null and void".

On May 23, 1966 Mr. Bremner signed an affidavit agreeing to the deletion of clause 58 under protest and reserved to the respondent its right to claim damage by reason of the breach of the original fixture.

Mr. Miral forwarded this affidavit with a covering letter dated May 26, 1966 and a copy of said letter to Mr. Triandafilou. The letter requested Mr. Triandafilou to sign and return the copy if he would agree to reinstate the charter party of April 11, 1966 as he signed it. On receipt of said letter Mr. Triandafilou called Mr. Miral and advised him that the reservation in said letter and affidavit was unacceptable. The copy has never been returned signed.

■ The petitioner in this proceeding is attempting to compel the respondent to proceed to arbitration under an arbitration agreement contained in a charter party dated April 11, 1966. It is essential, in order to compel the respondent to proceed to arbitration, for the petitioner to show a written agreement containing an arbitration clause which would bind the respondent under general contract law. Fisser v. International Bank, 282 F.2d 231 (2d Cir. 1960) ; 9 U.S.C. §§ 2 and 4.

■ This court finds, based on all of the credible evidence, that there never was one charter party dated April 11, 1966 on which both parties agreed. The original charter party containing the arbitration clause and dated April 11, 1966 was drawn up by Mr. Miral and was based on bale capacity which both Mr. Savage and Mr. Miral considered the basis of the oral fixture. This was signed by Mr. Triandafilou on behalf of the petitioners, but his signature was conditioned on Mr. Miral's changing "bale" to "grain" capacity. Both parties admitted that this was a major change and so this was a second charter party dated April 11, 1966. The respondent added clause 58 and then conditioned its signature upon the acceptance of this modification. The court finds that this charter party containing clause 58 amounted to a counter offer and was subsequently repudiated by the petitioner. Thus the court finds that there was no written agreement containing an arbitration clause which would bind respondent under general contract law.

■ The court finds no merit to the petitioner's claims of estoppel. At the time Mr. Bremner signed the Notice of Readiness on April 13, 1966 he knew the terms of the original charter party dated April 11, 1966 because Mr. Miral had confirmed the oral fixture with him. He had not seen the charter party as changed at the request of Mr. Triandafilou, but if he knew of it he also knew Mr. Miral had reserved his right to change "grain" back to "bale" and he had made his objections concerning the ship known to petitioner's agents. Under these circumstances the court cannot accept the petitioner's allegations of estoppel. Finally, all of the other statements relied on by the petitioner to support its estoppel theory were signed after the respondent had conditionally signed the charter party still bearing the date April 11, 1966 and in signing these statements the respondent's agents could have been considering this charter party.

The court therefore finds, based on all of the credible evidence presented to it, that there is no written agreement containing an arbitration clause which is binding upon the respondent in the proceeding. The proceeding is dismissed.

So ordered.