**INTEROCEAN SHIPPING COMPANY,**
Petitioner-Appellee,

v.

**NATIONAL SHIPPING AND TRADING CORPORATION and Hellenic International Shipping, S.A., Respondents-Appellants.**

No. 749, Docket 72–1150.

United States Court of Appeals,
Second Circuit.

Argued May 23, 1972.

Decided June 23, 1972.

---

David I. Gilchrist, New York City (Eli Ellis, Mark M. Jaffe and Hill, Betts & Nash, New York City, on the brief), for respondents-appellants.

James M. Estabrook, New York City (Joseph R. Kelley, Jr., Lennard K. Rambusch and Haight, Gardner, Poor & Havens, New York City, on the brief), for petitioner-appellee.

Before FRIENDLY, Chief Judge, and FEINBERG and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

The essential question on this appeal is whether, within the meaning of the Federal Arbitration Act, "the making of the arbitration agreement" [1] was in issue, thus requiring a trial of this question before directing appellants to proceed with the arbitration of a maritime dispute.

In July of 1971 Interocean Shipping Company, acting pursuant to the Federal Arbitration Act,[2] filed a petition in the district court to compel arbitration of a dispute arising under a charter party allegedly entered into by Interocean and appellants National Ship-

---

1. § 4 of the Federal Arbitration Act, 9 U.S.C. § 4 (1970).

2. 9 U.S.C. §§ 1–14 (1970).

ping and Trading Corporation and Hellenic International Shipping, S.A. The petition alleged that on March 17, 1971, National and Hellenic agreed to charter Interocean's vessel, the Oswego Reliance, for a period of approximately one year pursuant to the terms of the "Mobiltime" form charter, which included a clause providing for arbitration of "any dispute arising under [the] charter . . . ." Interocean further alleged that National and Hellenic repudiated this agreement on March 24, 1971. Appellants' answer denied the material allegations of the petition and demanded a trial. National's president, in an affidavit attached to the answer, stated that there had never been a meeting of the minds as to all the essential elements of a charter party. On December 30, 1971, without conducting a trial, the district court concluded that the making of the arbitration agreement was not in issue and granted the petition.[3] For the reasons stated below, we reverse and remand for a trial pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. § 4 (1970).

## I.

Interocean relied primarily on a fixture note dated March 17, 1971 to show that National and Hellenic had agreed to charter Interocean's vessel. This fixture note was prepared by Poten & Partners, Inc., charter brokers, and was sent to the parties on March 17. It indicated that Hellenic, a subsidiary of National, had agreed to charter the Oswego Reliance for approximately one year in accordance with the terms of a "Mobiltime" form charter, excluding clauses 9, 12(a)(ii), 12(b)(ii) and 12(b)(iii), and subject to a suitable dry-dock clause to be worked out for November dry-docking. The charter was to begin with the delivery of the vessel to Hellenic in the Persian Gulf between March 31 and April 15, 1971.

To substantiate its claim that a charter agreement existed, Interocean also attached to its petition a copy of an unexecuted "Mobiltime" form prepared by the broker on March 17 and sent to the parties. This charter party was intended to reflect the terms of the fixture note allegedly agreed upon by all the parties on March 17. However, while the broker had deleted the clauses referred to in the fixture note, it also had deleted that clause of the "Mobiltime" form pertaining to insurance coverage for the vessel. This charter party also set forth a dry-dock clause which would have required Hellenic to dry-dock the vessel in Spain, Portugal or Japan in November of 1971. Moreover, unlike the fixture note, which, after referring to Hellenic, added "subsidiary of National Shipping & Trading . . .", the charter party which was sent to Hellenic mentioned National as charterer's agent.

Following the receipt of the March 17 fixture note, there ensued a series of communications between Interocean and Hellenic concerning the terms of the charter party which Interocean contends were finalized on March 17. While it is not entirely clear upon which terms these negotiations focused, an examination of the telex messages attached to Interocean's petition reveals that Hellenic did request the inclusion of the Red Sea within the delivery range of the vessel. Hellenic also raised questions regarding Interocean's intention to enter its vessel in the Tanker Owners Voluntary Agreement against Liability for Oil Pollution (Tovalop) and the allocation of the costs of such insurance. Finally, on March 24, 1971, Hellenic broke off negotiations with Interocean, contending that there had never been agreement as to all the essential terms of a charter party.

After National and Hellenic refused to proceed with the arbitration

---

3. An order compelling arbitration under § 4 of the Federal Arbitration Act is a final order and is appealable under 28 U.S.C. § 1291 (1970). Hellenic Lines, Ltd. v. Louis Dreyfus Corporation, 372 F.2d 753, 754 (2 Cir. 1967); Chatham Shipping Co. v. Fertex S.S. Corp., 352 F.2d 291, 294 (2 Cir. 1965).

of Interocean's claim for $1.4 million in damages for appellants' breach of the charter party allegedly entered into on March 17, 1971,[4] Interocean filed the instant petition to compel arbitration.

## II.

Section 4 of the Federal Arbitration Act provides in relevant part that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."[5]

■ In the instant case, National and Hellenic deny the existence of the charter party which contains the arbitration clause upon which Interocean's petition relies. There can be no doubt that the question of the very existence of the charter party which embodies the arbitration agreement is encompassed within the meaning of "the making of the arbitration agreement." As we said in In re Kinoshita & Co., 287 F.2d 951, 953 (2 Cir. 1961), "if it was claimed that . . . there had at no time existed as between the parties any contractual relation whatever, . . . a trial of this issue would be required before an order could be issued directing the parties to proceed to arbitration." See also Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 985–86 (2 Cir. 1942); Superior Shipping Company v. Tacoma Oriental Line, Inc., 274 F.Supp. 25, 26 (S.D.N.Y.1967); Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 253 F.Supp. 359, 364–65 (SD.NY. 1966). Accordingly, if the making of the charter party was in issue, within the meaning of § 4 of the Arbitration Act, the district court should have proceeded to trial of this question.

■ In deciding whether the making of the charter party was in issue, the principles enunciated in Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625 (2

Cir. 1945), are controlling. There, in discussing what a party must show in order to place the making of an arbitration agreement in issue, we said:

"To make a genuine issue entitling the plaintiff to a trial by jury, an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial." 148 F.2d at 628.

Accord, Ocean Industries, Inc. v. Soros Associates International, Inc., 328 F. Supp. 944, 948 (S.D.N.Y.1971).

■ Here we believe that National and Hellenic satisfied the test articulated in Almacenes Fernandez, S.A. v. Golodetz, *supra*. Their answer to Interocean's petition categorically denied entering into a charter party with Interocean. Moreover, while appellants might be faulted for not presenting their arguments to the district court in a more coherent fashion, affidavits and exhibits attached to the petition and answer did tend to substantiate appellants' denial of the existence of contractual relations.

In particular, the fixture note, the "Mobiltime" form charter and the telex messages exchanged between Interocean and Hellenic on March 24, 1971 were sufficient to place in issue the question whether there had been a meeting of the minds as to all essential terms of a charter party on March 17. Under the general principles of contract law,[6] there is no contract if the parties fail to agree on all the essential terms or if some of the terms are too indefinite to be enforceable. See V'Soske v. Barwick, 404 F.2d 495, 500 (2 Cir. 1968), cert. denied, 394 U.S. 921 (1969); Ginsberg Machine Co. v. J. & H. Label Processing Corp., 341 F.2d 825, 828 (2 Cir. 1965). Here Interocean concedes, as it must in light of the fixture note, that no agreement

---

4. We hold that "the failure, neglect, or refusal to perform" the arbitration agreement is not in issue. 9 U.S.C. § 4 (1970). Accordingly, appellants are not entitled to a trial on this issue.

5. 9 U.S.C. § 4 (1970).

6. A charter party is merely a contract and hence is subject to all the rules and requirements of contract law. Gilmore and Black, The Law of Admiralty 172 (1957).

was reached on a dry-dock clause, but denies that such a clause is an essential term of a charter party. If this were the only issue in the case, we might be inclined to affirm the order of the district court. See Restatement (Second) of Contracts § 32(3), Illustration 11 (Tent. Draft No. 1, 1964). However, the telex messages of March 24 tend to show that Interocean and Hellenic had failed to reach agreement on March 17 on several items which might well be integral elements of a charter party. Thus, Interocean's message of March 24 indicates that Hellenic wanted the delivery range of the vessel to include the Red Sea. Furthermore, the fixture note of March 17 indicated that the insurance clause of the "Mobiltime" form would be part of the charter agreement. This clause, however, was deleted from the "Mobiltime" form which the brokers sent to Hellenic. When this deletion is considered in conjunction with Interocean's telex message of March 24 referring to the difficulties in reaching agreement over Interocean's participation in Tovalop, there is enough to place in issue the question of whether the parties agreed upon insurance coverage for the vessel. Whether the parties ever had a meeting of the minds as to the "delivery range" and insurance terms of the charter party and whether these terms, in addition to the drydock clause, can be considered essential terms of a charter party, present issues of fact which can only be determined after a hearing where evidence is received. *Cf.* El Hoss Engineer & Transport Co. v. American Independent Oil Co., 289 F.2d 346, 351 (2 Cir.), cert. denied, 368 U.S. 837 (1961); Hellenic Lines, Ltd. v. Louis Dreyfus Corp., 249 F.Supp. 526, 527 (S.D.N.Y.1966), aff'd, 372 F.2d 753 (2 Cir. 1967).

■ We also believe that appellants are entitled to a trial pursuant to § 4 of the Arbitration Act on whether Poten & Partners, Inc., the charter brokers, had authority to act for National and Hellenic. Appellants' answer denied the material allegations of paragraph five of the petition, which alleged that appellants had entered into a charter agreement with Interocean on March 17 through Poten & Partners, Inc. This denial is broad enough to encompass the question of Poten's authority to act for National and Hellenic. Moreover, a close examination of the fixture note lends some support to appellants' denial that Poten was authorized to act for them. This note, which was prepared by Poten and addressed to Interocean, confirmed "having fixed for *your account* today . . . ." a charter agreement with Hellenic. (Emphasis added). This quotation indicates that Poten may have been acting solely for Interocean. In any event, appellants presented enough to place in issue the scope of Poten's authority. The resolution of this issue requires a hearing where evidence can be received not only on the relationship between the various parties, but also on the customary practice of the charter brokerage business.

■ Finally, it is well established that whether a person is a party to the arbitration agreement also is included within the statutory issue of "the making of the arbitration agreement." Pan American Tankers Corp. v. Republic of Vietnam, 296 F.Supp. 361, 367 (S.D.N.Y.1969); Tubos De Acero de Mexico, S. A. v. Dynamic Shipping, Inc., 249 F. Supp. 583, 587 (S.D.N.Y.1966); Instituto Cubano De Estab. Del Azucar v. The Theotokos, 153 F.Supp. 85, 86 (S.D.N.Y.1957). Here we believe there is enough in the record to place in issue the question of whether National is a party to the charter agreement and hence to the arbitration agreement contained therein.

■ This question is placed in issue by the fact that National is not accorded the same status in either Interocean's petition, the "Mobiltime" form charter or the fixture note. The petition merely states that Hellenic is a subsidiary of National, which fact would

not in itself be sufficient to make National liable for breach of agreement to charter. Moreover, the "Mobiltime" form sent to Hellenic refers to National as the charterer's agent. Since Hellenic was a disclosed principal, National's acting as agent would not make it a party to the charter agreement. Restatement (Second) of Agency § 320 (1958). Furthermore, the fixture note, after referring to Hellenic, adds "subsidiary of National Shipping & Trading with appropriate letter of guarantee." Interocean now points to the fixture note as showing that National was the guarantor under the charter. If in fact National were a surety, however, it still could not be held accountable for Hellenic's breach of the charter agreement. Merely agreeing to act as surety for a charter party is not a maritime contract. Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co., 151 F. 440, 443–44 (7 Cir. 1907). See also Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961). This suretyship therefore would be subject to the New York statute of frauds. Since National's alleged guarantee was not in writing, it would not be enforceable. N.Y. General Obligations Law § 5–701(2) (McKinney 1964). Thus, while it is impossible to determine National's status on the basis of this confused record, there was sufficient uncertainty to entitle National to a trial on this issue.

We emphasize that we do not decide today whether a valid charter agreement existed and whether National was a party to that agreement. We merely hold that appellants have shown enough to entitle them to a trial of these issues pursuant to § 4 of the Arbitration Act. As in El Hoss Engineer & Transport Co. v. American Independent Oil Co., *supra*, 289 F.2d at 351:

"[T]here would appear to be issues of fact . . . . These issues should not be determined on affidavits, but rather a full trial should be had."

Reversed and remanded for further proceedings not inconsistent with this opinion.