**SPHERE DRAKE INSURANCE LIMITED, Plaintiff–Appellant,**

v.

**CLARENDON NATIONAL INSURANCE COMPANY and Clarendon America Insurance Company, Defendants–Appellees.**

**Docket No. 00–9464.**

United States Court of Appeals, Second Circuit.

Argued May 24, 2001.

Decided Aug. 28, 2001.

James I. Rubin, Butler, Rubin, Saltarelli & Boyd, Chicago, IL (Thomas R. Misero, Wilson, Elser, Moskowitz, Edelman & Dicker, L.L.P ., New York, NY, R. Douglass Bond & Mark A. Schwartz, Butler, Runin, Saltarelli & Boyd, Of Counsel) for Plaintiff–Appellant.

Gary M. Zinkgraf, Foley & Lardner, New York, N.Y. (H. Barry Vasios, Gilbert, Segall and Young LLP, Of Counsel) for Defendants–Appellees.

Before: CARDAMONE, PARKER, and CUDAHY *, Circuit Judges.

CUDAHY, Circuit Judge:

Through its agents, Sphere Drake Insurance Limited (Sphere Drake) agreed to reinsure certain insurance contracts that had been issued by Clarendon National Insurance Company and Clarendon America Insurance Company (collectively "Clarendon"). Unhappy with the terms of

* The Honorable Richard D. Cudahy of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

these reinsurance contracts, Sphere Drake brought a declaratory judgment action, seeking to have the contracts declared void and to avoid arbitration in spite of the contracts' arbitration clauses. Clarendon moved to dismiss the action, pursuant to Rule 12(b)(6), and to compel arbitration. Clarendon argued in support of its motion, and the district court ruled, that the contracts were subject to their arbitration clauses, and that, accordingly, the contracts' validity should be resolved in arbitration. The district court granted Clarendon's motion to dismiss and compel arbitration. Sphere Drake appeals. We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

## I.

Sphere Drake is a British company in the business of providing both direct insurance and reinsurance. In January 1997, Sphere Drake issued a binding authority to Horace Holman International Limited ("HHI"), which authorized HHI to accept direct insurance and reinsurance business on Sphere Drake's behalf. With Sphere Drake's approval, HHI appointed Euro International Underwriting Ltd. ("Euro") to operate the binding authority.

Clarendon comprises two New Jersey companies having their principal place of business in New York. Clarendon is a direct writer of workers' compensation insurance, and, at the time of the transactions here at issue, engaged Raydon Underwriting Management Company Limited (Raydon) as an underwriting manager. As underwriting manager, Raydon accepted insurance business on behalf of Clarendon and purchased reinsurance that protected Clarendon from some of the risk that accompanied this

business. Raydon was owned by Stirling Cooke Brown Holdings Limited (Stirling Cooke), which also acted as an agent for Clarendon in acquiring reinsurance.

In 1997 and 1998, Euro and Stirling Cooke entered into—or, as Sphere Drake alleges, only attempted to enter into—six reinsurance contracts[1] pursuant to which Sphere Drake agreed to reinsure certain insurance policies issued by Clarendon. Clarendon and Sphere Drake both performed on the contracts without complaint until, in a letter dated March 31, 1999, Sphere Drake informed Clarendon that it had discovered that the six contracts here at issue were fraudulently induced by Euro and Stirling Cooke. Sphere Drake concluded by stating that it was unilaterally disavowing its obligations under each contract, but was willing to repay the amount of all premiums paid on the contracts to date by Clarendon. Not satisfied with this turn of events, Clarendon demanded arbitration of what it considered to be Sphere Drake's breach of the contracts in accordance with the following arbitration clause that was contained in each contract:

> Disputes between the parties arising out of this Reinsurance which cannot be resolved by compromise, including but not limited to any controversy as to the validity of this Reinsurance, whether such disputes arise before or after termination of this Reinsurance shall be submitted to arbitration.

As a result of Clarendon's demand for arbitration, Sphere Drake brought this action in district court, seeking a declaration that the contracts—including the contracts' arbitration clauses—were unenforceable because the contracts were void *ab initio*.

---

1. The 1997 reinsurance contracts are numbered AH0075997, AH0083197, AH0040897, AH0040997, AH0071397. The 1998 reinsurance contract is numbered AH0116198.

In attempting to convince the district court that the contracts were void and therefore non-arbitrable, Sphere Drake argued that Euro (which accepted the contracts on Sphere Drake's behalf) breached its fiduciary duty by accepting all business that Stirling Cooke provided without evaluating the reasonableness of the accompanying risks, leading to contracts that were "commercially absurd" and "economically disastrous." Following oral argument on Clarendon's motion, the district court read its decision from the bench, holding that this dispute was subject to the contracts' arbitration clauses. In reaching its decision, the district court relied primarily on the rule of *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), which held that a party claiming fraud in the inducement of a contract would have to bring that claim before an arbitrator because it did not allege that the fraud in the inducement related to the arbitration clause specifically. Because Sphere Drake did not allege any wrongdoing related specifically to the arbitration clause, the district court held that *Prima Paint* directed arbitration. Sphere Drake appeals.

## II.

On appeal, Sphere Drake argues that the district court should not have compelled arbitration of Clarendon's breach of contract claim (and Sphere Drake's defenses to these claims) because the contracts—and thus the arbitration clauses in the contracts—are unenforceable. An order compelling arbitration is reviewed *de novo. Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.,* 88 F.3d 129, 132 (2d Cir.1996).

## A.

This action technically arises under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("CREFAA"), as enforced by Chapter Two of the Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 201 *et seq.* (West 1999), because the parties reside in different countries and both of those countries—the United States and the United Kingdom— are signatories to the CREFAA. *See* 9 U.S.C.A. § 201 note, at 515. The CREFAA provides that:

> The court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

CREFAA, *done* June 10, 1958, art. 2, para. 3, 21 U.S.T. 2517 (entered into force by the United States Dec. 29, 1970), *reprinted at* 9 U.S.C.A. § 201 note, at 511. A similar provision in Chapter One of the FAA provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court.... [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C.A. § 4 (West 1999). As is evident from both 9 U.S.C.A. §§ 4 and 206, a strong presumption of arbitrability is established by the FAA. *See Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 104 (3d Cir.2000); *United States Fire Ins. Co. v. Nat'l Gypsum Co.,* 101 F.3d 813, 816 (2d Cir.1996); *Bergesen v. Joseph Muller Corp.,* 710 F.2d 928, 933 (2d Cir.1983).

Indeed, "the Supreme Court has instructed that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir.1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). However, in spite of the FAA's presumption in favor of arbitration, a court may compel arbitration under the Act only if the agreement is not "null and void, inoperative or incapable of being performed." CREFAA, art. 2, para. 3.[2] If the making of the agreement to arbitrate is placed in issue—as Sphere Drake attempts to do by alleging that the contracts in which the arbitration provisions are found never came into existence—the court must set the issue for trial. However, the party putting the agreement to arbitrate in issue must present "some evidence" in support of its claim before a trial is warranted. *See Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir.1972); *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir.1945) ("To make a genuine issue entitling the plaintiff to a trial by jury, an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial."). Before we turn to the merits, we must first detail the governing law, for the parties rely heavily on cases that may,

without further explanation, appear conflicting.

Sphere Drake argues that it has placed the making of the agreement for arbitration in issue by showing that the contracts which contain the arbitration clauses are themselves void *ab initio* as a result of Euro's alleged failure to act within the scope of its agency. In making its argument, Sphere Drake relies heavily on *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673 (2d Cir.1972). *Interocean* involved an arbitration clause in a contract between Interocean Shipping Company and National Shipping and Trading Corporation for the charter of a vessel owned by Interocean. Interocean sought to enforce the arbitration clause, but National Shipping denied that it had entered into an agreement and pointed to correspondence between the parties, which allegedly proved that no meeting of the minds had occurred as to several essential contract terms. Although the district court enforced the arbitration clause, we reversed and remanded for a trial on the question whether the contract containing the arbitration clause had been formed because National Shipping had sufficiently placed the making of the entire contract in issue by categorically denying that an agreement had been made and providing some evidence in support of its denial. *See id.* at 676; *see also U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146–50 (2d Cir.2001) (addressing similar defense).

Clarendon responds to Sphere Drake's arguments by pointing to *Prima Paint*

---

2. While this case technically arises under the CREFAA, we may look to precedent discussing 9 U.S.C.A. § 4's requirement that the court be "satisfied the making of the agreement for arbitration ... is not in issue" in interpreting the CREFAA's similar requirement that a court may compel arbitration "unless it finds that the said agreement is null

and void, inoperative or incapable of being performed." *See* 9 U.S.C.A. § 208 ("Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States."); *Sandvik AB*, 220 F.3d at 104–05 (3d Cir.2000) (relying on § 4 to interpret the CREFAA).

Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In *Prima Paint*, the petitioner alleged that it had been fraudulently induced by the respondent into agreeing to a contract that contained an arbitration clause. The respondent sought arbitration of the contract, which the Supreme Court compelled, stating:

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.... We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal .court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. 1801. The Court thus announced what has become known as the severability doctrine—that "arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be· held to encompass arbitration of the claim that the contract itself was induced by fraud." 388 U.S. at 402, 87 S.Ct. 1801; *cf. Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 452 (2d Cir.1995) (discussing, in dicta, separability of arbitration clauses).

While the teachings of *Interocean* and *Prima Paint* may appear conflicting, they can be sensibly harmonized by understanding that their outcomes implicitly—if not explicitly—rely on the distinction between void and voidable contracts, a distinction already recognized in at least two other circuits. *See Sandvik AB*, 220 F.3d

at 106–07; *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir.1991); *cf. Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587,, 590–91 (7th Cir.2001) (discussing *Sandvik* and *Three Valleys* with approval, but not explicitly recognizing distinction between void and voidable contracts). Although this is a distinction that may have a metaphysical ring, it is a useful distinction for present purposes.

■ A void contract is one that produces no legal obligation. *See* Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 1:20, at 49 (4th ed.1990). Such contracts are rare: "Illustrations of agreements that are wholly void of legal effect are not very numerous...." Joseph M. Perillo, *Corbin on Contracts*, § 1.7, at 21 (rev. ed.1993). However, *Interocean* provides a good example of a void contract, for when parties fail to agree to essential contract terms, the agreement does not come into existence—it is void and wholly unenforceable. (Indeed, the appellation "void contract" is, as noted by Williston, a misnomer, for "[i]f an agreement is void, it cannot be a contract." 1 Williston, *supra*, § 1:20, at 49.) Under *Interocean*, a party alleging that a contract is void—and providing some evidence in support—is entitled to a trial on the contract's arbitrability.

■ Unlike a void contract, a voidable contract is an agreement that "[u]nless rescinded ... imposes on the parties the same obligations as if it were not voidable." 1 Williston, § 1:20, at 50. Although not explicitly stated in *Prima Paint*, the contract at issue there was merely voidable because an allegation of fraud in the inducement is a defense that renders contracts voidable, but not void. *See, e.g., Mix v. Neff*, 99 A.D.2d 180, 473 N.Y.S.2d 31, 33 (3d Dep't 1984). And, under *Prima Paint*, a party is not entitled to a trial on

the arbitrability of a voidable contract unless the party alleges that the arbitration clause itself is voidable and provides some evidence in support of its allegation.

 The preceding discussion of *Prima Paint* and *Interocean* may thus be summarized as follows. If a party alleges that a contract is void and provides some evidence in support, then the party need not specifically allege that the arbitration clause in that contract is void, and the party is entitled to a trial on the arbitrability issue pursuant to 9 U.S.C.A. § 4 and the rule of *Interocean.* However, under the rule of *Prima Paint,* if a party merely alleges that a contract is voidable, then, for the party to receive a trial on the validity of the arbitration clause, the party must specifically allege that the arbitration clause is itself voidable. Accordingly, to defeat the arbitration clauses in the contracts at issue, Sphere Drake must allege that the contracts as a whole are void or that the arbitration clauses in the contracts are voidable. Of course, it is not enough for Sphere Drake to make allegations—Sphere Drake must also produce some evidence substantiating its claim. *See Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.,* 663 F.2d 4, 7 (2d Cir.1981) (per curiam).

## B.

Sphere Drake does not attempt to show that the contracts' arbitration clauses are voidable under *Prima Paint.* Instead, Sphere Drake primarily attempts to show that the contracts themselves are void, a feat it attempts to accomplish by pointing to the rule that if an agent that has been charged with negotiating a contract on behalf of the principal acts outside the scope of its agency, *and the opposing party knows this,* then the agent lacks both actual and apparent authority, and the principal is not bound to the contract, for the contract is void—it never came into legal existence. *See Scientific Holding Co. v. Plessey Inc.,* 510 F.2d 15, 24 (2d Cir.1974) (Friendly, J.); *Ernst Iron Works v. Duralith Corp.,* 270 N.Y. 165, 170, 200 N.E. 683 (1936); *Van Arsdale v. Metro. Title Guar. Co.,* 103 Misc.2d 104, 425 N.Y.S.2d 482, 484–85 (Dist. Ct. Nassau County 1980); 2A N.Y. Jur.2d *Agency and Independent Contractors* § 99 (1998).[3] However, while Sphere Drake alleges that it has satisfied the requirements of this rule, it generally provides insufficient evidence in support.

[8] Indeed, Sphere Drake has presented sufficient evidence to warrant a trial with respect to only one of the six reinsurance contracts here at issue. Specifically, with regard to the 1998 reinsurance contract (No. AH0116198), Sphere Drake alleges both that Euro exceeded its authority by writing premiums in an amount that exceeded the amount authorized by Sphere Drake and that Stirling Cooke knew of this. In support, Sphere Drake provides the affidavit testimony of Nicholas Craig Bentley, the operations director of RiverStone Management Limited, Sphere Drake's run-off manager. Bentley states

---

3. Four of the contracts contain the following choice-of-law clause: "This Reinsurance shall be governed by and construed in accordance with the laws of New York State, U.S.A., under the jurisdiction of the courts of New York State, U.S.A." The choice-of-law clauses in the remaining two contracts call for application of New Jersey law, but are otherwise identically worded. Accordingly, we consider New York and New Jersey law, as appropri-

ate, for questions relating to contract formation. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 477–79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (holding that Federal Arbitration Act does not preempt choice-of-law clause). Because the laws of New York and New Jersey are identical on the points relevant to the outcome here, we cite only to New York law for convenience.

that Euro provided Stirling Cooke with a copy of the binding authority, which included a description of Euro's $12 million gross premium limit for 1998. Bentley further states that, at the time of the contract at issue, Stirling Cooke had already entered into contracts with Sphere Drake that exceeded $18 million. Accordingly, Stirling Cooke—and thus Clarendon—knew, or should have known, that Euro was exceeding the scope of its authority by continuing to write reinsurance contracts in Sphere Drake's name. Because Sphere Drake has presented some evidence that Euro had neither actual nor apparent authority to enter into the 1998 contract—and that the contract is thus void—it has put the making of the agreement, including the agreement to arbitrate, in sufficient issue as to warrant a trial on the question whether the arbitration clause in the 1998 contract is enforceable.[4]

█ With regard to the five 1997 contracts, Sphere Drake has failed to present sufficient evidence to warrant a trial. As with the 1998 contract discussed earlier, Sphere Drake's attack on these contracts relates to the contracts in general, and not the arbitration clauses specifically. Thus, Sphere Drake must show that the entire contracts are void. Sphere Drake attempts to do so by again arguing that Euro exceeded its authority and that Clarendon knew of this. However, Sphere Drake does not present sufficient evidence—such as the Bentley affidavit discussed above—that Stirling Cooke knew Euro to be exceeding the terms of the binding authority for any of the five remaining contracts. The strongest "evidence" that Sphere Drake can muster in

support of its argument is its allegation in the complaint that the contracts were so outrageous that Stirling Cooke—and thus Clarendon—must have known that Euro was exceeding the scope of its authority by entering into them. This allegation, however, is not supported by any evidence whatsoever. It is merely speculation, and it is thus insufficient to gain Sphere Drake a trial on the arbitrability of the five 1997 contracts.

█ In addition to arguing that Euro lacked authority to bind Sphere Drake to the contracts, Sphere Drake makes a much weaker argument, alleging that "[Euro] was obviously acting in its own interest and in the interests of Clarendon and its agents, and not in the interest of Sphere Drake." Appellant's Br. at 17. In support, Sphere Drake produces the affidavit of Timothy G. Holloway, an insurance consultant who reviewed the disputed reinsurance contracts. Based upon his review of the contracts, Holloway concluded that Euro failed to act in Sphere Drake's interest when entering into the contracts because Euro had made uninformed decisions and thus entered into "dangerous" contracts to which no reasonable underwriter would bind its principal. However, this evidence at best establishes that Euro was acting as a double agent without Sphere Drake's or Clarendon's knowledge. And "[i]t is New York law that a contract entered into through an agent for both parties is voidable at the option of either party where the parties had no knowledge of the dual agency and the agent has any discretionary role whatsoever." *Monarch Ins. Co. v. Ins. Corp. of Ir., Ltd.,* 835 F.2d 32, 36 (2d Cir.1987)

---

4. In determining that a trial is required with regard to the arbitrability of the disputes arising out of the 1998 contract, we of course do not pass judgment on the validity of the arbitration clause; we merely find that Sphere Drake has presented sufficient evidence to warrant a trial. At trial, Clarendon may raise all the defenses that it has raised before us—such as whether Sphere Drake assented to the contract by waiting a year to repudiate it.

**34**

(citations omitted). Because this allegation of voidability goes to the contracts as a whole, and not specifically to the arbitration clauses contained in the contracts, Sphere Drake fails to establish that it is entitled to a trial as to the arbitrability of the five 1997 contracts. *See Prima Paint*, 388 U.S. at 402–03, 87 S.Ct. 1801.

### III.

For the reasons stated above, we: (1) AFFIRM the district court's holding that the five 1997 contracts are subject to arbitration; (2) REVERSE the district court's holding that the 1998 contract is subject to arbitration; and (3) VACATE the district court's order subjecting the 1998 contract to arbitration. The case is REMANDED for further proceedings consistent with this opinion.