IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 07-0665

════════════

 

In re Morgan Stanley &
Co., Inc.,

successor to Morgan Stanley
DW, Inc., Relator

 

 

════════════════════════════════════════════════════

On Petition for Writ of
Mandamus

════════════════════════════════════════════════════

 

 

Argued October 15, 2008

 

 

            Justice
Medina delivered the opinion of the Court, in which Chief Justice Jefferson, Justice Wainwright,
Justice Green, Justice Johnson, and Justice
Willett joined.

 

            Justice
Brister filed a concurring opinion.

 

            Justice
Willett filed a concurring opinion.

 

            Justice
Hecht filed a dissenting opinion.

 

            Justice
O’Neill did not participate in the decision.

 

 

In
this original mandamus proceeding, the relator seeks
to compel arbitration in accordance with its agreement in the underlying case.
The other putative party to the agreement resists arbitration on the ground
that she lacked the mental capacity to assent to the contract. The question
here is whether the court or the arbitrator should decide this issue of
capacity. The trial court concluded that it was the proper forum. We agree and,
accordingly, deny the petition for writ of mandamus.

I

Helen Taylor’s estate was worth
several million dollars in 1999, the year in which she was diagnosed with
dementia. That year, she also transferred several of her securities accounts to
Morgan Stanley. Each account agreement with Morgan Stanley included an
arbitration clause.1 Over the next few years, Taylor also
signed a durable power of attorney in favor of her granddaughter, Kathryn
Albers, and a trust agreement, naming Albers as trustee. During this period,
Albers made gifts to her mother, her sister, and herself from Taylor’s estate.

            In
2004, a Dallas probate court appointed Nathan Griffin as guardian of Taylor’s
estate. By this time, the value of her estate had been significantly reduced.
In May 2005, the guardian sued Taylor’s granddaughters and others for violation
of the Texas Uniform Fraudulent Transfer Act, civil theft, conversion, and for
the imposition of a constructive trust. About a year later, Taylor’s guardian
added Morgan Stanley as a defendant, asserting breach of fiduciary duty,
negligence and malpractice, unsuitability of investments, violations of the
Texas Security Act, and breach of contract. Morgan Stanley moved to compel
arbitration of the dispute. The guardian resisted the motion, arguing that
Taylor lacked the mental capacity to contract when she signed the account
agreements with arbitration clauses and that it was for the court, not an
arbitrator, to decide this issue of capacity. Taylor’s guardian also
subsequently nonsuited the breach of contract claim.2
The trial court refused to compel arbitration.

            Morgan
Stanley petitioned the court of appeals for mandamus relief, but the court also
declined to order the matter to arbitration. In re Morgan Stanley & Co.,
2007 Tex. App. LEXIS 5582, 2007 WL 2035128 (Tex. App.—Dallas July 17, 2007,
orig. proceeding) (mem. op.). Morgan Stanley then
petitioned this Court. We set the case for argument to consider whether a court
or an arbitrator should determine the issue of mental capacity to contract.

II

            The
Federal Arbitration Act (“FAA”) generally governs arbitration provisions in
contracts involving interstate commerce. See 9 U.S.C. § 2; see also
In re L & L Kempwood Assocs., L.P., 9 S.W.3d
125, 127 (Tex. 1999). Where the FAA ostensibly controls, as it does here, an
agreement to arbitrate is valid except on grounds as exist at law or in equity
to revoke the contract. 9 U.S.C. § 2. Section 2 of the
FAA provides that courts shall compel arbitration on issues subject to an
arbitration agreement. Id. Section 4 of the FAA provides that a court
may consider only issues relating to the making and performance of the
agreement to arbitrate. 9 U.S.C. § 4. Thus, once a
party seeking to compel arbitration has established that there is a valid
agreement to arbitrate and that the plaintiff’s claims are within the
agreement’s scope, the trial court must compel arbitration. Id.;
In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (per curiam).

            Before
1967, however, courts often reasoned that any defense that would render the
entire contract unenforceable or void was for the court to decide because if
the underlying contract was invalid so too was the agreement to arbitrate. See
generally Katherine V.W. Stone, Arbitration
Law at 242 (2003). The United States Supreme Court rejected that
reasoning in Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,
388 U.S. 395, 404 (1967).

            The
issue in Prima Paint was whether the court or an arbitrator should
decide a claim of fraud in the inducement of the entire contract. Id. at 402. Relying on section 4 of the FAA, the
Supreme Court held that a claim of fraud in the inducement of a contract
generally, as opposed to the arbitration clause specifically, was for the
arbitrator, not the court, to decide. Id. at 404 (“a federal court may
consider only issues relating to the making and performance of the agreement to
arbitrate”). Prima Paint thereby established the “separability”
doctrine, explaining that an arbitration provision was separable from the rest
of a contract under section 4 and that the issue of the contract’s validity was
to be determined by the arbitrator unless the challenge was to the agreement to
arbitrate itself. Id. at 402-04.

            Since
Prima Paint, we have dutifully followed the separability
doctrine that presumptively favors arbitration. See Southland Corp.
v. Keating, 465 U.S. 1, 15-16 (1984) (holding that federal arbitration law
created by the FAA applies in state courts). We have held that defenses
attacking the validity of a contract as a whole, and not specifically aimed at
the agreement to arbitrate, are for the arbitrator, not the court. See In re
RLS Legal Solutions, LLC, 221 S.W.3d 629, 631-32
(Tex. 2007). But we have also recognized that the presumption favoring
arbitration arises only after the party seeking to compel arbitration proves
that a valid arbitration agreement exists. J.M. Davidson,
Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003). We have not,
however, previously considered whether the defense of mental incapacity is an
attack on the validity of the contract as a whole and therefore a matter for
the arbitrator, as Morgan Stanley argues, or a gateway matter concerning the
existence of an agreement that must be proven to the satisfaction of the court,
as Taylor’s guardian argues.

            There
is some disagreement about what Prima Paint requires in this situation.
The Fifth Circuit in Primerica Life Insurance Co. v. Brown, 304 F.3d
469, 472 (5th Cir. 2002), has concluded that the arbitrator should decide a
defense of mental incapacity because it is not a specific challenge to the
arbitration clause but rather goes to the entire agreement. The Tenth Circuit
reached the opposite result in Spahr v. Secco,
330 F.3d 1266 (10th Cir. 2003), concluding that the “mental incapacity defense
naturally goes to both the entire contract and the specific agreement to
arbitrate in the contract.” Id. at 1273. Thus,
under the Tenth Circuit’s view, the mental incapacity defense places the
“making” of the arbitration agreement at issue under Section 4 of the FAA,
giving the court authority to determine whether the parties have actually
agreed to arbitration. Id. The Supreme Court has not yet settled this
conflict but rather expressly reserved the question in Buckeye Check Cashing,
Inc. v. Cardegna, 546 U.S. 440, 444 n.1. (2006).

            Buckeye
concerned the defense of illegality. The plaintiffs there claimed that the
defendant’s check cashing agreement “violated various Florida lending and
consumer-protection laws,” and was therefore void and illegal ab initio. Id.
at 443. Applying Florida law, the Florida Supreme Court agreed that the
contract was illegal and void, and refused to compel arbitration. Id. at 443, 446. Applying Prima Paint’s
doctrine of separability, the U.S. Supreme Court
reversed the Florida Supreme Court. Id. at 449.

            As
it had done in Prima Paint, the Supreme Court rejected the notion that
the enforceability of the arbitration agreement depended on the distinction
between void and voidable contracts. Id. at 448. Instead, the Court reiterated three
controlling principles of federal arbitration law. First, that an arbitration
provision is severable from the remainder of the contract. Id.
at 445. Second, that “unless the challenge is to the arbitration clause
itself, the issue of the contract’s validity is considered by the arbitrator in
the first instance.” Id. at 445-46. Third, that
federal arbitration law applies in state and federal courts. Id.
at 446. The Court concluded that because the plaintiffs challenged “the [a]greement, but not specifically its arbitration provisions,”
the rule of separability applied, and the arbitration
provisions were enforceable “apart from the remainder of the contract.” Id. at 446.

            Most
importantly to our present case, however, was the distinction the Supreme Court
drew between issues of validity and issues of contract formation. The Court
noted that an illegality defense, raising the issue of the contract’s validity,
was different from a formation defense, raising the issue of whether a contract
was ever concluded:

 

The issue of the contract’s validity is different from
the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses
only the former, and does not speak to . . . whether the alleged obligor ever
signed the contract, Chastain v. Robinson-Humphrey Co., 957 F.2d 851
(C.A.11 1992), whether the signor lacked authority to commit the alleged
principal, Sandvik AB v. Advent Int’l Corp.,
220 F.3d 99 (C.A. 3 2000); Sphere Drake Ins. Ltd. v. All American Ins. Co.,
256 F.3d 587 (C.A.7 2001), and whether the signor lacked the mental capacity to
assent, Spahr v. Secco, 330 F.3d 1266 (C.A.10
2003).

 

Id. at 444 n.1. The Court thus
excluded from its analysis several contract-formation-defense issues, including
the defense in this case, that the signor lacked the mental capacity to assent.

            Although
the Supreme Court in Buckeye grouped illegality with fraudulent
inducement for purposes of Prima Paint’s separability
doctrine and expressly excluded the issue of mental capacity along with other
contract-formation issues from that analysis, the Dissent here concludes that
mental capacity is really more like fraudulent inducement, suggesting that the
Supreme Court was wrong to include it with the other contract-formation issues.
Compare ___ S.W.3d at ___ (Hecht, J., dissenting) (“seems to me, lack of
capacity is closer to fraudulent inducement”), with Buckeye, 546 U.S. at
444, n.1. The Dissent reasons that incapacity is different from the other
contract-formation issues distinguished in Buckeye because a contract
signed by an incapacitated person exists subject to ratification or avoidance
by the incapacitated person. ___ S.W.3d at ___. But
the Dissent’s analysis begs the question of whether a contract exists. As the
Fifth Circuit has observed, “where the ‘very existence of a contract’
containing the relevant arbitration agreement is called into question, the
federal courts have authority and responsibility to decide the matter.” Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th
Cir. 2004). And, when the issue of mental capacity is raised, the “very
existence of a contract” is at issue. Id. Because the Supreme Court has
grouped mental capacity with the other issues of contract formation, we do so
as well.

III

            Several
courts have read Buckeye to add a third discrete category to the Prima
Paint analysis, which includes: (1) a challenge to the validity of the
contract as a whole, (2) a challenge to the validity of the arbitration
provision itself, and (3) a challenge to whether any agreement was ever
concluded. Prima Paint reserves the first category for the arbitrator
and the second category for the court. Buckeye, 546
U.S. at 446. Since Buckeye, the federal courts,3
a state supreme court,4 and other state appellate courts5
have generally concluded that the third category involves a threshold inquiry
for the court. Even before Buckeye’s comment about contract formation,
virtually every court refused to compel arbitration absent the existence of an
agreement to arbitrate.6

            The
Fifth Circuit’s decision in Primerica, that the defense of mental
incapacity is an issue for the arbitrator, not the court, because it is an
attack on the whole contract, stands in stark contrast to these authorities.
Moreover, Primerica has been roundly criticized,7
and we aware of no other court that has followed its reasoning, including the
Fifth Circuit. Several months after Primerica, the Fifth Circuit, in
fact, reached a decidedly different result in another case involving the issue
of a contract-formation defense to an arbitration clause.

            In
Will-Drill Resources, Inc. v. Samson Resources, 352 F.3d 211 (5th Cir.
2003), Samson resisted arbitration on the grounds that all parties had not
signed the agreement containing the arbitration clause. The case involved several sellers of mineral leases. Id. at 213. Some of the sellers
had agreed to arbitrate any dispute, and some had never signed the underlying
contract. Id. at 215. The Fifth Circuit concluded that
whether the sellers had signed the agreement went directly to the “making” of
the agreement and the party’s consent to arbitrate. Noting that arbitration
could not be forced upon a party “absent its consent,” the court wrote:

 

            [W]here the
very existence of an agreement is challenged, ordering arbitration could result
in an arbitrator deciding that no agreement was ever formed. Such an outcome
would be a statement that the arbitrator never had any authority to
decide the issue. A presumption that a signed document represents an agreement
could lead to this untenable result. We therefore conclude that where a party
attacks the very existence of an agreement, as opposed to its continued
validity or enforcement, the courts must first resolve that dispute.

 

352 F.3d at 219
(internal citation omitted). Similarly, we have concluded that whether an arbitration
agreement binds a nonsignatory is a gateway matter to
be determined by the court, rather than the arbitrator, unless the parties
clearly and unmistakably provide otherwise. In re Weekley Homes, L.P., 180 S.W.3d
127, 130 (Tex. 2005); see also In re Labatt Food Serv., L.P., 279 S.W.3d. 640, 643 (Tex. 2009) (when “arbitration
agreement is silent about who is to determine whether particular persons are
bound by the agreement, courts, rather than the arbitrator, should determine
the issue”).

            When
deciding federal questions of first impression, we anticipate how the U.S.
Supreme Court would decide the issue. City of Lancaster v.
Chambers, 883 S.W.2d 650, 658–59 (Tex. 1994). This analysis often draws
on the precedents of other federal courts, or state courts, to determine the
appropriate answer. Given the overwhelming weight of authority, it is apparent
to us that the formation defenses identified in Buckeye are matters that
go to the very existence of an agreement to arbitrate and, as such, are matters
for the court, not the arbitrator. Although the Fifth Circuit reached a
different conclusion in Primerica, we are not obligated to follow that
decision. See Penrod Drilling Corp. v. Williams,
868 S.W.2d 294, 296 (Tex. 1993) (“While Texas courts may certainly draw upon
the precedents of the Fifth Circuit, or any other federal or state court, in
determining the appropriate federal rule of decision, they are obligated to
follow only higher Texas courts and the United States Supreme Court.”).
Instead, we agree that Primerica misapplies Prima Paint’s separability doctrine:

 

Despite casual assumptions to the contrary, Prima
Paint does not merely preserve for the courts challenges that are
“restricted” or “limited” to “just” the arbitration clause alone—this would be
senseless; it preserves for the courts any claim at all that necessarily
calls an agreement to arbitrate into question. To send a dispute to
arbitration where “not only” the arbitration clause itself, but “also,” in
addition, the “entire” agreement is subject to challenge, is to lose sight of
the only important question—which is the existence of a legally enforceable
assent to submit to arbitration. Someone lacking the requisite mental capacity
to contract cannot, I dare say, assent to arbitrate anything at all.

 

Alan Scott Rau, Everything You
Really Need to Know About “Separability” in
Seventeen Simple Propositions, 14 Am. Rev. Int’l
Arb. 1, 17 (2003). We agree that Prima Paint
reserves to the court issues like the one here, that the signor lacked the
mental capacity to assent. Accordingly, the trial court did not abuse its
discretion in declining to yield the question to the arbitrator.

            Relator’s petition for writ of mandamus is denied.

 

____________________________________

David M. Medina

Justice

 

 

OPINION
DELIVERED: July 3, 2009


























[1] The arbitration provisions in the new
account agreements stated:

 

Arbitration of Controversies

 

You agree that all controversies between
you and your principals or agents and Morgan Stanley Dean Witter or its agents
(including affiliated corporations) arising out of or concerning any of your
accounts, orders or transactions, or the construction, performance, or breach
of this or any other agreement between us ... shall be determined by
arbitration only ....

 





[2] Although
the breach of contract claim has been nonsuited, the
doctrine of direct benefits equitable estoppel may
apply to compel the arbitration of other claims. A person who has not agreed to
arbitrate may nevertheless be compelled to do so when the person “seeks,
through the claim, to derive a direct benefit from the contract containing the
arbitration provision.” In re Kellogg Brown & Root, Inc., 166 S.W.3d
732, 741 (Tex. 2005); see also In re Weekley
Homes, L.P., 180 S.W.3d 127, 131 (Tex. 2005). Equitable estoppel
is inapplicable, however, when the benefit is merely indirect; that is, when
the substance of the claim arises from general obligations imposed by state
law, including statutes, torts and other common law duties, or federal law.
In re Kellogg Brown & Root, 166 S.W.3d at 740-41; see, e.g., R.J.
Griffin & Co. v. Beach Club II Homeowners Ass’n, 384
F.3d 157, 162, 164 (4th Cir. 2004) (refusing signatory’s request to
apply equitable estoppel and compel arbitration
against another signatory; the legal duties the signatory builder allegedly
violated did not depend on the terms of the contract but arose from the common
law and statute and thus signatory resisting arbitration was not seeking a
direct benefit of the contract); Intergen
N.V. v. Grina, 344 F.3d 134, 140, 145 (1st Cir.
2003) (refusing signatory’s request to apply equitable estoppel
to compel nonsignatory to arbitration because nonsignatory had relied upon misleading and inaccurate
extra-contractual assurances and sustained losses; nonsignatory
alleged state-law causes of action apart from the contract, including
intentional deceit, negligent deceit, unfair trade practices, promissory estoppel, tortious interference
with advantageous relations, and quantum meruit);
Westmoreland v. Sadoux, 299 F.3d 462, 467 (5th
Cir. 2002)(refusing nonsignatory’s request to apply
equitable estoppel to compel signatory to arbitration
where that signatory’s suit did not rely upon the terms of its shareholder
agreement or seek to enforce any duty created by the agreement); see also
Mohamed v. Auto Nation USA Corp., 89 S.W.3d 830, 837 (Tex. App.—Houston
[1st Dist.] 2002, no pet.)(refusing nonsignatory’s
request to apply equitable estoppel and compel
arbitration where suit against nonsignatory did not
rely on employment contract to assert claims for race discrimination,
intentional infliction of emotional distress, or negligent hiring, supervision,
and retention); cf. Fridl v. Cook, 908 S.W.2d
507, 513 (Tex. App.—El Paso 1995, writ dism’d w.o.j.) (refusing to compel
arbitration where signatory party resisting arbitration had alleged independent
fraud claim).





[3]              See
Sanford v. Memberworks, Inc., 483 F.3d 956,
962-64 (9th Cir. 2007) (holding that challenges to whether a contract was
concluded must be determined by the court prior to arbitration); Krutchik v.
Chase Bank USA, N.A., 531 F. Supp. 2d 1359, 1363 (S.D. Fla. 2008)(holding
that it is for the court to decide where “the initial formation or existence of
a contract, including a disputed arbitration clause is legitimately called into
question”); Toledano v. O’Connor, 501 F. Supp.
2d 127, 140 (D.D.C. 2007)(“[This circuit has not addressed] the propriety of
district-court adjudication of challenges to the formation of a contract
containing an arbitration provision (as opposed to challenges to the formation
of the arbitration provision itself). [But, we have] long treated disputes over
the formation of an agreement to arbitrate—i.e., whether the parties ever
agreed to submit anything to arbitration in the first place—as properly before
the district court.”) (internal quotation marks omitted); Foss v. Circuit
City Stores, Inc., 477 F. Supp. 2d 230, 234-35 (D. Me. 2007) (“The
distinction first articulated in Prima Paint Corp. regarding the
appropriate role for the court and the arbitrator is not determinative on
questions regarding the very formation of a contract. . . . [A] challenge to
whether a contract was ever validly concluded is for the court, and not the
arbitrator, to decide.”); Larson v. Speetjens,
NO. C 05-3176 SBA, 2006 U.S. Dist. LEXIS 66459,at
*11-12 2006 WL 2567873, at *3 (N.D. Cal. Sept. 5, 2006) (“The Supreme Court has distinguished between
three categories of challenges to arbitration provisions . . . . First, if a
challenge is to the contract as a whole, it must be decided by the arbitrator.
Second, if a challenge is specifically to the arbitration provision, it must be
decided by a court. Finally, if a challenge is to a party’s signatory power to
the contract, it must be decided by a court.”) (internal citations omitted); see
also Fox Int’l Relations v. Fiserv Sec., Inc.,
418 F. Supp. 2d 718, 723-24 (E.D. Pa. 2006) (“after the Supreme Court’s Buckeye
decision, it appears that there are three categories of challenges to
arbitration provisions,” and concluding that a challenge to a party’s signatory
power falls under the third category and thus must be decided by a court).

 





[4]        
 Thompson v. Lithia Chrysler Jeep Dodge of Great Falls,
185 P.3d 332, 338 (Mont. 2008) (“the court is the proper body to hear a
challenge to the existence of a contract containing an arbitration provision”).

 





[5]           See Bruni
v. Didion,
73 Cal. Rptr. 3d 395, 406 (Cal. Ct. App. 2008) (“A court, however, still must consider one type of
challenge to the overall contract: a claim that the party resisting arbitration
never actually agreed to be bound.”); Operis Group, Corp. v. E.I. at Doral, LLC,
973 So. 2d 485, 488 (Fla. Dist. Ct. App. 2007) (“A challenge to the very
existence of any agreement between the parties is thus distinguishable from a
challenge to the validity of a presumptively existing, signed document.”); Rowe
Enters., LLC v. Int’l Sys. & Elecs.
Corp., 932 So. 2d 537, 538-41 (Fla. Dist. Ct. App. 2006) (stating trial
court is required to hold hearing on defendant’s motion to compel arbitration
when plaintiff’s principal claimed that he had never seen document containing
arbitration clause, and that his signature on that document had been forged); Rhymer v. 21st Mortgage Corp.,2006 Tenn. App.
LEXIS 800, at *9, 2006 WL 3731937, at *3 (Tenn. Ct. App. Dec. 19, 2006)
(holding that trial court is required to decide mental capacity challenge
because federal courts “have generally reasoned that there is a difference
between challenging a contract on the basis of a party’s status (i.e. mental
incapacity) and challenging a contract based on behavior/conduct of a party
(i.e. fraudulent inducement)”).

 





[6] See
Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429-30 (5th Cir.
2004)(holding that federal courts have the authority and responsibility to
decide matters where the challenge concerns the “very existence of a contract”
or whether a contract with an arbitration clause was concluded); Will-Drill
Res., Inc. v. Samson Res. Co., 352 F.3d 211, 218 (5th Cir. 2003)(holding
that “[w]here the very existence of any agreement is disputed, it is for the
courts to decide at the outset whether an agreement was reached”); Spahr v. Secco, 330 F.3d 1266, 1268, 1272–73 (10th Cir. 2003)
(holding that courts hear a party’s challenge to the whole contract based on
the claim that the signor did not have mental capacity to sign); Sphere
Drake Ins. Ltd. v. All Am. Ins. Co., 256 F.3d 587, 591 (7th Cir. 2001)
(“[A]s arbitration depends on a valid contract[,] an argument that the contract
does not exist can’t logically be resolved by the arbitrator . . . .”); Sandvik AB v. Advent Int’l Corp., 220 F.3d
99, 100-01 (3d Cir. 2000) (refusing to compel arbitration where the party
seeking arbitration asserted that “the agent who signed the agreement on its
behalf lacked authority to do so” because Prima Paint presumes an
underlying existent agreement); Chastain v. The Robinson-Humphrey Co.,
957 F.2d 851, 854 (11th Cir. 1992) (stating that “Prima Paint has never been
extended to require arbitrators to adjudicate a party’s contention, supported
by substantial evidence, that a contract never existed at all”); Three
Valleys Mun. Water Dist. v. E.F. Hutton & Co.,
925 F.2d 1136, 1136-42 (9th Cir. 1991)(refusing to compel arbitration where the
plaintiffs claimed individual who signed the agreement lacked the authority to
bind the plaintiffs because Prima Paint was “limited to challenges
seeking to avoid or rescind a contract” and was inapplicable to
“challenges going to the very existence of a contract that a party claims never
to have agreed to.”); Nat’l R.R. Passenger Corp. v. Boston & Maine Corp.,
850 F.2d 756, 761 (D.C. Cir. 1988) (“if the parties disagree as to whether they
ever entered into any arbitration agreement at all, the court must resolve that
dispute”) (internal citations omitted); I.S. Joseph Co. v. Mich. Sugar Co.,
803 F.2d 396, 400 (8th Cir. 1986) (holding that Prima Paint does not
apply when a party challenges the whole contract based on the claim that the
assignee cannot enforce the contract); A.T. Massey Coal Co. v. Int’l Union,
United Mine Workers of Am., 799 F.2d 142, 146 (4th Cir. 1986) (refusing to
compel arbitration until district court decided question of existence of a
contract to arbitrate); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,
636 F.2d 51, 55 (3d Cir. 1980) (“A party may, in an effort to avoid
arbitration, contend that it did not intend to enter into the agreement which
contained an arbitration clause.”); Interocean
Shipping Co. v. Nat’l Shipping & Trading Corp., 462 F.2d 673, 676–77
(2d Cir. 1972) (holding that a party’s assertion that it never entered into the
contract containing the arbitration clause should be decided by the trial
court); J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003)
(stating that if a “party resists arbitration, the trial court must determine
whether a valid agreement to arbitrate exists”); Am. Med. Techs., Inc. v.
Miller, 149 S.W.3d 265, 270 (Tex. App.—Houston [14th Dist.] 2004, no
pet.)(stating that when a party seeks to compel arbitration, a trial court must
first determine the existence of a valid agreement to arbitrate); see also
Large v. Conseco Fin. Servicing Corp., 292
F.3d 49, 53-54 (1st Cir. 2002) (reviewing cases “involving allegations that the
contract with the arbitration clause never existed”); Fleetwood
Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073
(5th Cir. 2002) (holding that federal policy favoring arbitration does not
apply to the determination of whether there is an agreement to arbitrate); but
see Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 472 (5th Cir.
2002) (holding that the Prima Paint rule does apply to mental
capacity defenses).

 





[7] See, e.g., Stephen K. Huber, The Arbitration Jurisprudence
of the Fifth Circuit: Round IV, 39 Tex. Tech. L. Rev. 463, 476 (2007)
(disapproving Primerica as not “sensible” for ignoring the distinction
between contract defenses and contract formation); Alan Scott Rau, Everything
You Really Need to Know About “Separability” in
Seventeen Simple Propositions, 14 Am.
Rev. Int’l Arb. 1, 15-16 (2003) (criticizing Primerica as a
“bizarre and inexplicable misreading” of the separability
doctrine).