206 F.3d 1300 (9th Cir. 2000)
 SUSAN M. DEMANDO, on behalf of herself and all others similarly situated, Plaintiff-Appellant,
v.
NIGEL W. MORRIS, an individual; CAPITAL ONE FINANCIAL OPINION CORPORATION, a Delaware banking corporation; CAPITAL ONE BANK, Defendants-Appellees.
 No. 98-16001
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted November 1, 1999
Filed March 21, 2000
 
 COUNSEL: Robert S. Green and Gordon M. Fauth, Jr., Girard & Green, San Francisco, California, for the plaintiff-appellant.
 James F. McCabe, Morrison & Foerster, San Francisco, California, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; James Larson, Magistrate Judge, Presiding. D.C. No. CV-97-03391-JL
 Before: Alfred T. Goodwin, Mary M. Schroeder, and Arthur L. Alarcon, Circuit Judges. Opinion by Judge Schroeder
 OPINION
 SCHROEDER, Circuit Judge:
 
 
 1
 Susan DeMando appeals the district court's grant of summary judgment in favor of defendant Capital One Bank. DeMando, who holds a credit card issued by Capital One, alleges that the bank's course of dealing violated the Truth in Lending Act ("TILA"), 15 U.S.C. SS 1601-1693, and constituted breach of contract, unfair competition, fraud, and misrepresentation under California law. We affirm the dismissal of the state law claims but hold that she has stated a claim against Capital One under TILA for issuing a disclosure that failed to reflect the terms of the underlying credit agreement.
 
 
 2
 In June 1995, DeMando received a solicitation letter bearing the signature of Capital One's president. The letter bore a heading in large block letters that read "Receive a 10.9% Lifetime APR!" and went on to describe an offer by Capital One: "Simply transfer $250 or more toyour Capital One card and receive a low fixed APR of 10.9%--for life!" (Emphasis in original). The letter also stated: "You will keep this low fixed rate as long as your account remains in good standing. Not only will you save hundreds in interest, but you will never have to shop for another credit card again! This is not an introductory rate. It will not expire to a higher rate--ever! Knowing that can make your finances more manageable." Finally, the letter noted, "P.S. Don't miss this opportunity to receive this low fixed APR! Please refer to the Important Information on back."
 
 
 3
 Printed on the reverse side of the letter was a "Notice of Change in Terms." The Notice informed DeMando that "[b]y requesting a balance transfer of at least $250, you agree to a change in your Capital One Customer Agreement . . . . The monthly periodic rate and corresponding ANNUAL PERCENTAGE RATES used to calculate the FINANCE CHARGE is explained below. All other terms and conditions for your Account remain in full force and effect. " (Emphasis in original.) The Notice included a table that stated that the applicable annual percentage rate ("APR") would be 10.9%, but did not expressly provide that this APR was to be a fixed or "lifetime" rate.
 
 
 4
 DeMando requested a balance transfer, and began receiving the 10.9% APR. In August 1997, Capital One mailed DeMando a Notice of Change in Terms informing her that her APR would be increased to 14.99%, effective as of the October 1997 billing cycle. Capital One currently claims that this Notice was a mistake, and that when it sent out notices of increased APRs it first attempted to segregate all computer "cells" containing customers with fixed APRs. According to Capital One, it sought "diligently to exclude from the August 1997 interest rate change those accounts on which it agreed that the APR would not be changed if the customer's account remained in good standing."
 
 
 5
 DeMando protested the attempted increase immediately. She contends that she called Capital One's customer service hotline and was told that the 1997 Notice was not a mistake but rather was sent in accordance with DeMando's Customer Agreement, which the customer service representative asserted gave Capital One the right to change the applicable APR at any time. On September 15, DeMando filed a complaint alleging violations of TILA and the California Consumer Legal Remedies Act and seeking relief for breach of contract, unfair competition, fraud, and negligent misrepresentation.
 
 
 6
 On September 16, Capital One wrote to DeMando to inform her that it was voluntarily rescinding the change. It said that while the "Customer Agreement . . . explains that we may change the terms of your account at any time," Capital One agreed "[i]n the interest of customer goodwill" not to increase her APR in October 1997: "Your annual percentage rate for purchases will remain a 10.9% fixed rate." Accordingly, DeMando's APR was never in fact increased from 10.9% and remains at 10.9% today.
 
 
 7
 After rescinding the attempted change in rate, Capital One filed a motion to dismiss or, in the alternative, for summary judgment. DeMando cross-moved for summary judgment on her unfair competition and breach of contract claims, and moved for class certification. The parties consented to the disposition of the proceedings before a magistrate judge. By order dated April 24, 1998, Magistrate Judge James Larson granted summary judgment in favor of Capital One on every count and dismissed DeMando's motion for class certification as moot.
 
 
 8
 At this stage of the litigation, the parties are in essential agreement that the terms of the underlying credit agreement between the parties were modified in 1995 to create a fixed rate of interest. The parties also agree that when Capital One purported to increase that rate in 1997, it violated the terms of the agreement as modified. Therefore, the district court properly granted summary judgment to Capital One on several of DeMando's claims that were fundamentally inconsistent with these premises.
 
 
 9
 There is no merit to DeMando's claim that Capital One violated TILA in 1995. The solicitation letter adequately set forth the terms of the permanent fixed rate that constituted the 1995 modification to the contract. There is similarly no merit to DeMando's claims that the 1995 solicitation letter constituted unfair competition, fraud, or misrepresentation. Capital One was and is legally bound by the terms of that letter.
 
 
 10
 We also affirm the district court's grant of summary judgment to Capital One on DeMando's claim that the 1997 Notice of Change in Terms entitles DeMando to damages for breach of contract. Capital One agrees that it should not have sent the notification to DeMando, but because the intended increase never went into effect, DeMando never had to pay a higher rate. DeMando has therefore not been injured by any violation of the credit agreement, nor is any future injury threatened.
 
 
 11
 DeMando is entitled to proceed, however, with her claim that the 1997 Notice of Change in Terms violated TILA. Because the Notice contained terms that were in violation of the credit agreement, the Notice violated Regulation Z. That regulation, promulgated by the Federal Reserve, gives teeth to TILA by prescribing specific disclosure requirements with which lenders must comply. See 12 C.F.R. S 226. The subsection of Regulation Z pertinent here provides that all disclosures issued in conjunction with open-ended credit arrangements, which include credit cards, "shall reflect the terms of the legal obligation of the parties." 12 C.F.R. S 226.5(c). Failure to comply with any requirement imposed under TILA's credit provisions, including the original and subsequent disclosure requirements imposed by Regulation Z, gives rise to civil liability. See 15 U.S.C.S 1640(a); Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996) (credit lender liable under TILA for subsequent disclosures that failed accurately to reflect the legal obligation of the parties).
 
 
 12
 DeMando has suffered the loss of a statutory right to disclosure and has therefore suffered injury in fact for purposes of Article III standing. See FEC v. Akins, 524 U.S. 11 (1998). In a class action, a lender liable for a TILA violation is subject to statutory damages even in the absence of any actual damages. See 15 U.S.C. S 1640(a). TILA provides that statutory damages are to be "such as the court may allow," with no minimum applicable to each class member and a total cap of either $500,000 or 1 percent of the creditor's net worth, whichever is lower. Id. at S 1640(a)(2)(B). Lenders are also liable for "a reasonable attorney's fee as determined by the court." Id. at S 1640(a)(3).
 
 
 13
 Capital One responds that it is entitled to the protections of 15 U.S.C. S 1640(c), which exempts certain inadvertent TILA violations. To qualify for such protection, however, the creditor must establish by a preponderance of the evidence both that the violation was not intentional and that it constituted "a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Id. The affidavit upon which Capital One relies tends to establish that the error was unintentional but does not explain what procedures it employed that were reasonably adapted to avoid the error.
 
 
 14
 We affirm the district court's judgment for Capital One on all of DeMando's claims except her claim of a TILA violation in 1997, and the district court should consider any appropriate discovery requests related to that claim. DeMando's motion for class certification is no longer moot and should be considered by the district court to determine whether the prerequisites to a class action under Federal Rule of Civil Procedure 23(a)-(b) have been satisfied.
 
 
 15
 REVERSED IN PART; REMANDED IN PART FOR FURTHER PROCEEDINGS. Costs are awarded to appellant.