**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PATRICIA SANFORD,
             *Plaintiff-Appellant,*

v.

MEMBERWORKS, INC., a Delaware
corporation, aka MWI Essentials,
aka MWI Home and Garden, aka
MWI Connections, aka MWI
Valuemax; WEST CORPORATION, a
Delaware corporation; WEST
TELEMARKETING CORPORATION, a
Delaware corporation,
             *Defendants-Appellees,*

v.

PRESTON SMITH; RITA SMITH, on
behalf of themselves and all others
similarly situated,
    *Plaintiffs-Intervenors-Appellants.*

No. 05-55175

D.C. No.
CV-02-00601-LAB

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
February 9, 2007—Pasadena, California

Filed April 16, 2007

Before: Cynthia Holcomb Hall, Diarmuid F. O'Scannlain,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Hall

4265

**COUNSEL**

Eric Alan Isaacson, Lerach Coughlin Stoia Geller Rudman &
Robbins, San Diego, California, for the plaintiff-appellant and
the plaintiffs-intervenors-appellants.

Darrel J. Hieber, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, California, for defendant-appellee Memberworks, Inc.

M. Jerome Elmore and Joshua F. Thorpe, Bondurant, Mixson & Elmore, Atlanta, Georgia, for defendants-appellees West Corporation and West Telemarketing Corporation.

## OPINION

HALL, Senior Circuit Judge:

Patricia Sanford appeals the district court's order confirming an arbitration award in her action against MemberWorks, Inc., West Corporation, and West Telemarketing Corporation for alleged violations of 39 U.S.C. § 3009 and related state law claims. Preston and Rita Smith appeal the district court's order denying their motion to intervene in the same action. The district court had jurisdiction under 28 U.S.C. § 1331. This court has jurisdiction under 28 U.S.C. § 1291. We affirm in part, vacate in part, and remand for further proceedings.

## I.   Background

In response to a television advertisement, Sanford purchased a set of fitness tapes by phone from NCP Marketing, through a call center operated by defendants West Corporation and West Telemarketing Corporation (collectively "West"). At the time, defendant MemberWorks, Inc. had an agreement with NCP under which NCP's sales agent, West, would read customers a sales script for a free trial membership in the MemberWorks Essentials program.[1] The script was identical or substantially similar to the following:

---

[1]Essentials is a service which offers its members a 20% discount at certain retailers for an annual fee of $72.

Mr(s). ___, for purchasing Tae-Bo today, we're sending you a risk-FREE 30-day membership to ESSENTIALS, a service designed to SAVE YOU 20% from leading stores such as EXPRESS and FLORSHEIM, plus reward savings at VICTORIA'S SECRET, TJ MAXX, PIER ONE and TARGET, PLUS additional savings on eyewear, beauty products, haircuts, and more! After 30 days, the service is extended to a full year for just $6 a month, billed annually in advance to the credit card you're using today. If you want to cancel, just call the toll-free number that appears in your kit in the first 30 days and YOU WON'T BE BILLED. So look for that kit in the mail, OKAY?

According to MemberWorks records, Sanford was enrolled in the Essentials program and was sent a membership kit with an agreement containing an arbitration clause.[2] Sanford has no recollection of having been read a script, agreeing to the trial membership, or receiving a membership kit. When Sanford did not cancel at the end of the trial membership, her credit card was billed $72 for a one-year membership. The following year, Sanford was charged $84 for renewal of the program, which Sanford disputed and which MemberWorks then refunded. Sanford claims this second charge is the first she heard of the Essentials program.[3]

On March 28, 2002, Sanford filed a claim against Member-Works and West for violating 39 U.S.C. § 3009, which makes the mailing of unordered merchandise an unfair trade practice,

---

[2]The arbitration clause, nestled in a paragraph entitled "Governing Law," states that "[a]ny dispute arising between You and Us will be resolved by submission to arbitration in Fairfield County, State of Connecticut, in accordance with the rules of the American Arbitration Association then in effect."

[3]During this action, MemberWorks also refunded the initial $72 charge to Sanford.

along with state law claims for conversion, unjust enrichment, and fraud. The complaint sought class certification and a jury trial. MemberWorks then brought a motion (which West joined) to compel arbitration of Sanford's individual claim pursuant to the arbitration clause of the membership agreement, to stay the case pending arbitration or alternatively to dismiss for failure to state a claim, and to strike the class allegations. Sanford disputed that she had entered a contract with MemberWorks and argued that the arbitration clause was therefore not binding upon her.

On July 15, 2002, the district court granted MemberWorks' motion to compel arbitration. The court's order acknowledged Sanford's contention that she was unaware that she had enrolled in the Essentials program. But it explained that because Sanford "challenges the validity of the whole contract and not specifically the arbitration agreement," her claim "is an issue for the arbitrator and not the Court." The district court then denied MemberWorks' request for a stay and denied the motion to strike as moot.

Because West did not allege it was a party to any agreement with Sanford, the court denied West's joinder in the motion to compel arbitration. Instead it dismissed the federal claim against West on the ground that West never mailed Sanford any unordered merchandise, and it declined to exercise supplemental jurisdiction over the state law claims against that defendant. As a result, the court explained, the case was "terminated as to West." The court further explained that if the arbitration were not completed within twelve months, the court would terminate the remainder of the case.

Sanford then brought a Petition to Arbitrate her class-action complaint before the American Arbitration Association, which appointed an arbitrator. In a preliminary ruling, the arbitrator ruled that he lacked jurisdiction to certify a class because he interpreted the district court's order as compelling arbitration only of Sanford's individual claim, not the issue of

class certification. Sanford then moved the district court to reconsider the order compelling arbitration and to certify a class. The district court denied this motion on June 12, 2003, explaining that the July 2002 order compelled Sanford to arbitrate only her individual claim and dismissed the class claims as moot. Sanford then brought a second motion for reconsideration, relying upon the intervening decision *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), which held that the issue of whether a contract permits class arbitration is a question for the arbitrator, not the court. The district court denied this motion as well, explaining that Sanford "has had the opportunity to request class arbitration of the arbitrator" and lost.

On March 15, 2004, the arbitrator issued his final ruling. Initially, he held that he lacked jurisdiction to decide Sanford's contention that no contract was formed between the parties. Calling his situation "curious," the arbitrator explained that the question of contract formation must be determined by the court before compelling arbitration under that contract. Because the district court had compelled arbitration here, he reasoned, it must necessarily have found that a contract existed. The arbitrator's jurisdiction stems from the district court's order, so he determined he was powerless to revisit that ruling.

But when purporting to decide Count I of Sanford's petition (seeking restitution for mailing unordered merchandise in violation of Section 3009), the arbitrator then found no contract had been formed. The arbitrator held that "even if the script was read to [Sanford,] the basic requirements of 'offer' and 'acceptance' were not met." He therefore awarded Sanford $72 in damages plus $34.57 in interest and $21,209.28 in arbitration fees, offset by the $72 reimbursement Member-Works had recently paid Sanford. The arbitrator found for MemberWorks on Sanford's other claims.

The Smiths then filed a motion to intervene in the district court to serve as alternative class plaintiffs. Shortly thereafter,

MemberWorks moved the district court to confirm the arbitrator's award. Sanford moved to confirm the arbitrator's decision that no contract was formed, but otherwise to vacate the award. On December 30, 2004, the district court denied Sanford's and the Smiths' motions, and granted MemberWorks' motion to confirm the arbitration award.

## II.   Standards of Review

We review de novo a district court's order compelling arbitration, its dismissal of the class claims as moot, and its dismissal of the claims against West. *See Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 n.2 (9th Cir. 2002); *Gest v. Bradbury*, 443 F.3d 1177, 1181 n.1 (9th Cir. 1996); *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Our review of the arbitration award is more deferential: we will vacate the award only if the arbitrator violated the Federal Arbitration Act or if the award itself is "completely irrational" or exhibits "manifest disregard of the law." *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003) (internal citation omitted). The denial of a motion to intervene as untimely is reviewed for abuse of discretion. *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999).

## III.   Discussion

### A.   Waiver

Before discussing the merits of Sanford's appeal, we must address defendants' claim that Sanford waived her right to challenge the July 2002 order. In separate motions to dismiss in part, MemberWorks and West assert that the July 2002 order compelling arbitration was an appealable final order under the Federal Arbitration Act. Therefore, they assert, Sanford should have immediately appealed that order, and any

appeal now is untimely under Federal Rule of Appellate Procedure 4.[4]

We begin by noting that through the Federal Arbitration Act, Congress sought "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004) (internal citations omitted). To that end, the act generally "promote[s] appeals from orders barring arbitration and limit[s] appeals from orders directing arbitration." *Id.*; *see also* 9 U.S.C. § 16(b)(2) ("[A]n appeal may not be taken from an interlocutory order . . . directing arbitration to proceed."). Defendants invoke an exception to this rule, 9 U.S.C. § 16(a)(3), which permits an immediate appeal of a "final decision with respect to an arbitration."

**[1]** The Supreme Court interpreted this statutory text in *Green Tree Financial Corp.—Alabama v. Randolph*, 531 U.S. 79 (2000). *Randolph* addressed the appealability of an order compelling arbitration and dismissing plaintiff's underlying claims with prejudice. The Court held that the statutory phrase "final decision" should be accorded the "well-established meaning" that governs appealability under 28 U.S.C. § 1291: a decision is final if it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Id.* at 86. In that case, "the District Court ha[d] ordered the parties to proceed to arbitration, and dismissed all the claims before it." *Id.* at 89. Because the order "disposed of the

---

[4]Defendants also seek to dismiss Sanford's appeal to the extent that it challenges the court's order denying the Smiths' motion to intervene, and the Smiths' appeal to the extent that it challenges rulings other than the denial of intervention. We decline to reach these alternative arguments. Even assuming defendants are correct, either Sanford or the Smiths has standing to appeal each issue presented. *Cf. Estate of Bishop v. Bechtel Power Corp.*, 905 F.2d 1272, 1275 (9th Cir. 1990) ("*Because [the attorney] has not pursued an appeal of his own,* we must decide whether a party has standing to appeal an order of sanctions against its attorney.") (emphasis added).

entire case on the merits and left no part of it pending before" the district court, the Court held that the order was final and therefore appealable. *Id.* at 86.

**[2]** We have addressed the post-*Randolph* divide between appealable and non-appealable orders compelling arbitration in a trio of cases. In *Interactive Flight Technologies, Inc. v. Swissair Swiss Air Transport Co.,* 249 F.3d 1177, 1179 (9th Cir. 2001), we held that an order granting defendant's motion to compel arbitration and dismissing the action without prejudice constitutes an appealable final decision. By contrast, in *Dees v. Billy*, 394 F.3d 1290, 1292-93 (9th Cir. 2005) we found that an order compelling arbitration and staying the case was not immediately appealable. *Dees* explained that this order was not final, despite the fact that the court ordered the case "administratively closed," because "the trial court here did not dismiss [plaintiff's] claim." *Id.* at 1292. The district court had compelled arbitration of the plaintiff's malpractice claim, but its failure to dismiss the claim meant that "that claim—although currently stayed—remains before the trial court." *Id.* at 1293. Similarly, in *Bushley,* 360 F.3d at 1153, we found an order that compelled arbitration without ruling on defendant's motion to stay or dismiss the claim is not "final and appealable" because the action was "effectively stayed pending the conclusion of the [ ] arbitration."

**[3]** Applying these principles to the case at bar yields the inescapable conclusion that the July 2002 order was not a "final decision with respect to an arbitration." While the order compelled Sanford to arbitrate her claims against Member-Works, the district court did not dismiss those claims. Rather, the court stated that it would terminate the case "if the arbitration . . . is not completed within twelve months."[5] In a later order, the district court made clear that no final judgment had been issued for purposes of permitting an appeal under Sec-

---

[5]By comparison, the order explicitly dismissed Sanford's claim against West, and noted that "the case shall be terminated as to West."

tion 1291.[6] Defendants point out that no "live" claims remained before the court, which later explained that it would only entertain motions relating to the arbitrator's final award. But this posture is no different than that presented in *Dees*, where the case was "administratively closed" pending the results of arbitration. *Dees*, 394 F.3d at 1292. Because Sanford's claims were not dismissed, they "remain[ed] before the trial court," *id.* at 1292, and at most could be described as "effectively stayed pending the conclusion of the [ ] arbitration," *Bushley*, 360 F.3d at 1153.

**[4]** We therefore conclude that the July 2002 order was not a "final decision with respect to the arbitration," and Sanford's appeal of that order now is timely. *See Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 897 (9th Cir. 2001) ("An interlocutory order becomes appealable when final judgment is entered.").[7]

## B. The 2002 Order Compelling Arbitration

**[5]** It is axiomatic that "[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v.*

---

[6]After the district court denied Sanford's motion for reconsideration, Sanford moved the court for a final judgment so that she could appeal the order compelling arbitration. In an October 2003 order, the district court refused to do so. Under a bold heading entitled "No Final Judgment," the court "decline[d] to issue a Final Judgment at this time. There has been no motion by Defendants to dismiss this case due to expiration of the arbitration period, and thus Plaintiff's request for a final judgment is premature."

[7]MemberWorks asserts for the first time at oral argument that Sanford's appeal of the dismissal of the class allegations as moot is untimely under Fed. R. Civ. P. 23(f). Assuming without deciding that the rule applies, "[n]othing within the language of the Rule 23(f), its authorizing statute (28 U.S.C. § 1292(e)), or its history indicates that it is meant to provide the exclusive route to obtaining appellate review or to impose time limits on [ ] appeals proper under other statutory provisions." *Bates v. United Parcel Serv.*, 465 F.3d 1069, 1076 n.5 (9th Cir. 2006).

*Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986). As a result, when one party disputes "the making of the arbitration agreement," the Federal Arbitration Act requires that "the court [ ] proceed summarily to the trial thereof" before compelling arbitration under the agreement. 9 U.S.C. § 4. We have interpreted this language to encompass not only challenges to the arbitration clause itself, but also challenges to the making of the contract containing the arbitration clause. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991). Issues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration. *Id.*[8]

**[6]** The parties here do not dispute that Sanford challenged the existence of a contract with MemberWorks, and therefore under *Three Valleys* the district court was required to rule upon the contract formation issue before compelling arbitration. Their quarrel regards whether the district court in fact did so. Sanford claims that the district court misinterpreted *Three Valleys* and therefore inappropriately referred the contract formation issue to the arbitrator. MemberWorks responds that, while the district court did not explicitly find that a contract was formed, the July 2002 order should be understood as implicitly having decided this question.

MemberWorks asserts that the July 2002 order was premised on the finding of a contract due to "the authorities upon which it relied to support its holding." *Citibank, N.A. v. Wells*

---

[8]Although the Supreme Court has not yet spoken on this issue, it has specifically noted the distinction between the validity of the contract and the question whether any agreement was formed. *See Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204, 1208 n.1 (2005). The Court explained that while its ruling relegated the question of contract illegality to the arbitrator, it "does not speak to the issue decided in the cases cited by respondents . . . which hold that it is for courts to decide whether the alleged obligor ever signed the contract." *Id.*

*Fargo Asia Ltd.*, 495 U.S. 660, 669-70 (1990). The order correctly stated that it must determine "whether a valid agreement to arbitrate exists" and cited *Three Valleys* at one point, indicating that the court was familiar with the decision. Therefore, MemberWorks argues, it would be unreasonable to construe the 2002 order as having referred the contract formation question to the arbitrator.

**[7]** MemberWorks' argument is unpersuasive. The 2002 order could not have implicitly decided the question of contract formation; it explicitly *refused* to decide the question. The operative language from the order reads:

> Under the FAA, the court is limited to determining (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue. A party challenging the validity of the contract, as a whole, is a question for the arbitrator and not the Court. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967). The holding in *Prima Paint* extends to attempts to rescind contracts on other grounds. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991). Therefore, a plaintiff must challenge the arbitration agreement itself.

> Here, Plaintiff contends that she was not aware that she was part of the membership program until she canceled in February 2000. In essence, she challenges the validity of the contract and not specifically the arbitration agreement. Accordingly, this is an issue for the arbitrator and not the court. (Quotation marks and citations omitted).

The order did not decide that the parties formed a contract. Rather, it interpreted *Prima Paint* as mandating that the court decide all challenges to an arbitration clause but the arbitrator decide all challenges to the contract as a whole. We rejected

this argument in *Three Valleys*, which limited *Prima Paint* "to challenges seeking to *avoid* or *rescind* a contract—not to challenges going to the very existence of a contract that a party claims never to have agreed to." *Three Valleys*, 925 F.2d at 1140 (emphasis in original). The district court's lone citation to *Three Valleys* thus misconstrues that case: the order claims that *Three Valleys* extended *Prima Paint*, when in fact it limited *Prima Paint* by precluding its application to the very issue that Sanford presented to the district court.[9]

[8] The 2002 order clearly stated that "Plaintiff's conten[-tion] that she was not aware that she was part of the membership program" was a "challenge[ to] the validity of the whole contract" and "[a]ccordingly [ ] is an issue for the arbitrator and not the Court." This holding is erroneous under *Three Valleys*. We must therefore vacate the July 2002 order compelling arbitration and remand the case to the district court to determine whether a contract was formed between Sanford and MemberWorks.

---

[9]Defendants also assert that a finding of contractual formation was appropriate because Sanford failed to offer evidence rebutting Member-Works' motion to compel arbitration. Even assuming that Rule 56 procedures are applicable to a motion to compel, *but cf. Hamilton v. Shearson-Lehman Am. Exp., Inc.*, 813 F.2d 1532, 1535 (9th Cir. 1987), we cannot say that the evidence MemberWorks proffered in support of its motion shows the absence of a genuine issue of material fact. MemberWorks introduced a declaration that its business records indicated that Sanford was enrolled in the Essentials program and sent a membership kit, along with copies of the kit and of MemberWorks' sales script. As Sanford notes (and the arbitrator subsequently found), this evidence could be interpreted as supporting her claim that MemberWorks' practices were misleading and that no assent ever occurred. "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys*, 925 F.2d at 1141 (citation omitted). We therefore decline to find that MemberWorks has demonstrated the absence of a material fact on the issue of contract formation.

## C. Class Allegations

**[9]** Sanford also claims that the July 2002 order erred in limiting arbitration to her individual claim and dismissing her class allegations as moot.[10] She relies primarily upon the Supreme Court's intervening decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), which held that the question whether a contract permits class arbitration is an issue for the arbitrator to decide. We do not reach the merits of this argument. Because we vacate the order compelling arbitration of Sanford's individual claim on other grounds, the class allegations are no longer moot. On remand, Sanford shall be permitted to seek relief on a class-wide basis. *See DeMando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) (reviving plaintiff's motion for class certification when disposition of appeal renders motion "no longer moot").

## D. Dismissal of Claims Against West

Sanford also challenges the district court's dismissal of her claims against West. Her federal claim was brought under 39 U.S.C. § 3009, which prohibits "the mailing of unordered merchandise." 39 U.S.C. § 3009(a); *see also id.* § 3009(c) (preventing "the mailer of any merchandise mailed in violation of subsection (a)" from billing for such merchandise). The district court dismissed Sanford's Section 3009 claim against West on the ground that West never actually mailed any merchandise to her. Sanford does not dispute this factual finding. Rather, she argues that "mailing" should be interpreted broadly, to include those who cause an item to be mailed.

---

[10]After compelling arbitration of Sanford's dispute with MemberWorks, the 2002 order denied as moot MemberWorks' motion to strike class allegations. In its June 2003 order denying reconsideration, the district court clarified that its earlier order had compelled arbitration of Sanford's individual claim and had dismissed Sanford's class allegations as moot.

**[10]** This broad interpretation cannot be reconciled with the plain language of the statute. Section 3009 is part of the Chapter 30 of the Postal Reorganization Act, PL 91-375 (1970), entitled "Nonmailable Matter." Other provisions of this statute plainly seek to reach those who cause prohibited matter to be mailed, in addition to the party actually mailing the material. *See, e.g.,* 39 U.S.C. § 3008(a) ("Whoever for himself, or by his agents or assigns, mails or causes to be mailed any pandering advertisement . . . shall be subject to an order of the Postal Service to refrain from further mailings . . . ." ); *id.* § 3010(a) ("Any person who mails or causes to be mailed any sexually oriented advertisement shall place on the envelope or cover thereof his name and address as the sender thereof and such mark or notice as the Postal Service may prescribe."). By contrast, Section 3009 reaches only "the mailing of unordered merchandise."

**[11]** "Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (internal citation and quotation marks omitted). Congress's use of the phrase "causes to be mailed" in other sections of Chapter 30, but its omission in Section 3009, indicates that this section was not intended to reach beyond those who actually mail unordered merchandise. Accordingly, we agree with the district court's ruling that Section 3009 does not reach West, and affirm the dismissal of Sanford's federal claim against that defendant. In light of this holding, it was not an abuse of discretion to dismiss Sanford's state law claims against West without prejudice once the federal claim was dismissed. *See United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

## E.   The Smiths' Motion to Intervene

The Smiths challenge the district court's denial of their motion to intervene as untimely. The timeliness of interven-

tion is measured by "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the length of the delay." *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (internal citation omitted). Here, the district court found that the Smiths waited nearly two years after the class claims were dismissed, and that intervention now, after Sanford's individual claims had been arbitrated, would be prejudicial to MemberWorks.

**[12]** Without ruling on the propriety of this decision, we note that the district court's concerns are no longer present in light of our vacatur of the order compelling arbitration and dismissing the class allegations as moot. We therefore vacate the denial of the Smiths' motion to intervene and permit the district court to re-evaluate this motion anew in light of our holding today.

## IV.    Conclusion

For the reasons discussed above, we DENY defendants' motions to dismiss this appeal in part. We AFFIRM the district court's dismissal of the claims against West, but otherwise VACATE the July 2002 order compelling arbitration of Sanford's claims against MemberWorks and dismissing Sanford's class allegations as moot. We thus necessarily VACATE the district court's 2003 orders regarding Sanford's motions for reconsideration, and the 2004 order confirming the arbitration award and denying the Smiths' motion to intervene. Finally, we REMAND the case for further proceedings in accordance with this opinion. Each party shall bear its own costs on appeal.