**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PATRICIA SANFORD, on behalf of
herself and all others similarly
situated,
              *Plaintiff-Appellant,*

PRESTON SMITH; RITA SMITH, on
behalf of themselves and all others
similarly situated,
      *Plaintiff-intervenors-Appellants,*

              v.

MEMBERWORKS, INC., a Delaware
corporation, AKA MWI Essentials,
AKA MWI Home and Garden,
AKA MWI Connections, AKA
MWI Valuemax; WEST
CORPORATION, a Delaware
corporation; WEST TELEMARKETING
CORPORATION, a Delaware
corporation,
              *Defendants-Appellees.*

No. 09-55502

D.C. No.
3:02-cv-00601-
MMA-AJB

OPINION

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted
May 6, 2010—Pasadena, California

Filed October 25, 2010

17489

Before: Diarmuid F. O'Scannlain and Richard C. Tallman,
Circuit Judges, and Frederic Block, Senior District Judge.*

Opinion by Judge O'Scannlain

*The Honorable Frederic Block, Senior United States District Judge for
the Eastern District of New York, sitting by designation.

## COUNSEL

Eric A. Isaacson, Robbins, Geller, Rudman & Dowd LLP, San Diego, California, argued the cause for the plaintiffs-appellants and filed briefs. Patrick J. Coughlin, Frank J. Jana-

cek, Christopher Collins, and Amanda M. Frame, Robbins, Geller, Rudman & Dowd LLP, San Diego, California; Jack Landskroner, Landskroner Grieco Madden, LLC, Cleveland, Ohio; and Artie Baran, Law Offices of Artie Baran APC, San Diego, California, were also on the briefs.

Darrel J. Hieber, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California, argued the cause for the defendants-appellees and filed a brief. Robert J. Herrington and Jennifer E. LaGrange, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California, were also on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether consumers can pursue claims against a company that allegedly deceived them into buying memberships in a discount club.

### I

#### A

In response to a television advertisement, Patricia Sanford purchased Tae-Bo fitness tapes over the phone in February 1999. West Corporation ("West") operated the call center that received Sanford's call. Pursuant to West's joint marketing agreements with MemberWorks, Inc. ("MWI"),[1] a West operator read Sanford the following sales script in an effort to "up-sell" a membership in the "MemberWorks Essentials" program:

> Mr(s). _____, for purchasing Tae-Bo today, we're

---

[1]MWI has since changed its name to Vertrue, Inc.

sending you a risk-FREE 30-day membership to ESSENTIALS, a service designed to SAVE YOU 20% from leading stores such as EXPRESS and FLORSHEIM, plus reward savings at VICTORIA'S SECRET, TJ MAXX, PIER ONE and TARGET, PLUS additional savings on eyewear, beauty products, haircuts, and more! After 30 days, the service is extended to a full year for just $6 a month, billed annually in advance to the credit card you're using today. If you want to cancel, just call the toll-free number that appears in your kit in the first 30 days and YOU WON'T BE BILLED. So look for that kit in the mail, OKAY?

Sanford had no recollection of hearing the script, agreeing to the free trial membership, or receiving the membership kit in the mail. Because she did not cancel her trial membership, her credit card was charged a $72 annual membership fee in March 1999. In January 2000, her credit card was charged an $84 renewal fee.

Preston and Rita Smith had a similar experience after purchasing various so-called "bait products" over the phone, including Tae-Bo videos, Nad's hair removal products, and Tai Vital Basics. The Smiths alleged that they were also read the sales script and, without their knowledge or consent, billed repeatedly for their membership in MemberWorks Essentials. They did not, however, allege whether it was Preston or Rita who placed each particular phone call.

## B

On March 28, 2002, Sanford filed a putative class action against MWI[2] asserting a claim for violation of the federal

---

[2]Sanford also named West as a defendant, but the district court dismissed all of her claims against West, and we affirmed the dismissal in a prior appeal. *See Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 965 (9th Cir. 2007). The claims against West are not at issue in this appeal.

Unordered Merchandise Statute, 39 U.S.C. § 3009, as well as state-law claims for conversion, unjust enrichment, and fraud. The district court granted MWI's motion to compel arbitration of Sanford's individual claims and dismissed the class claims as moot. After the arbitrator found for MWI on all claims except for Sanford's claim for restitution under the Unordered Merchandise Statute, the district court granted MWI's motion to confirm the arbitration award and denied the Smiths' motion to intervene as alternative named plaintiffs. We vacated the district court's orders and remanded in *Sanford v. MemberWorks, Inc.*, 483 F.3d 956 (9th Cir. 2007).

On remand, MWI abandoned its efforts to go to arbitration. Sanford filed a First Amended Complaint, which added the Smiths as named plaintiffs and added a claim for violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq*. MWI filed a motion to dismiss, but before the district court ruled on the motion, Sanford and the Smiths (collectively, "Plaintiffs") moved for leave to file a Second Amended Complaint on the ground that certain "ministerial" revisions were required to effectuate a settlement in a state-court action Sanford had filed against West. Although the district court granted leave to amend the complaint to avoid any impediment to the settlement, it dismissed the federal claims with prejudice and the state-law claims without prejudice but without leave to amend.

Plaintiffs then filed an ex parte application for leave to file a motion for reconsideration. For the first time, they asserted that "the facts alleged demonstrate that the fraudulent telemarketing practices at issue support a claim of RICO [Racketeer Influenced and Corrupt Organizations Act] violations." Although the district court expressed doubt as to whether the facts supported a RICO claim, it granted the motion in part, allowing Plaintiffs to file a motion for leave to amend their complaint that "should demonstrate on its face why amendment would not be futile."

Plaintiffs filed a proposed Third Amended Complaint, which not only included new RICO claims, but also added two new plaintiffs and realleged claims that had been dismissed with prejudice. MWI moved ex parte to dismiss or, in the alternative, to strike the realleged claims and new plaintiffs. The district court granted the motion to strike and held that it would assess only the new RICO claims in the proposed Third Amended Complaint. As to those claims, the district court denied leave to amend, holding that amendment would be futile and that Sanford no longer had standing because she had settled all of her claims in the state-court action. The district court entered judgment in favor of MWI, and this appeal timely followed.

## II

We consider first whether the district court properly dismissed Sanford from the action for lack of standing.[3]

**[1]** "Mootness [is] the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (internal quotation marks omitted). "Generally, when a party settles all of his personal claims before appeal, an appeals court must dismiss the appeal as moot unless that party retains a personal stake in the case that satisfies the requirements of Article III." *Smith v. T-Mobile USA, Inc.*, 570 F.3d 1119, 1122 (9th Cir. 2009). "In

---

[3]Sanford contends that we need not consider whether she continues to have standing because the Smiths have standing, and "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements" of Article III. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1215 n.1 (9th Cir. 2008). Because the district court did not rule on class certification, however, this action consists of Sanford's individual claims and the Smiths' individual claims, which arise out of different facts. To bring her individual claims, Sanford must satisfy the jurisdictional requirements of Article III independently of the Smiths.

order to retain . . . a 'personal stake,' a class representative cannot release any and all interests he or she may have had in class representation through a private settlement agreement." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1264 (9th Cir. 2010).

In the state-court action against West, Sanford entered into a settlement agreement in which she agreed to relinquish "any claims arising out of or that could have arisen out of the allegations set forth" in her state-court case.[4] Because her claims against MWI in this action arise out of the same allegations in her state-court case against West, *see West Corp. v. Sup. Ct.*, 11 Cal. Rptr. 3d 145, 149-50 (Ct. App. 2004) (describing the allegations), she has indeed relinquished them.

**[2]** Sanford nevertheless contends that she retains a personal stake in this action in the form of shifting litigation costs and fees to putative class members. We disagree. Included within the scope of the claims expressly released by the settlement agreement are "all claims, . . . whether class, individual, or otherwise, including any claim for costs, expenses, pre or post judgment interest, penalties, fees (including attorneys' fees, expert fees and consulting fees) . . . for any kind of relief whatsoever (including injunctive relief, monetary relief, damages, punitive damages, restitution, reimbursement, disgorgement, and economic injury)." Based on this broad language, we conclude that Sanford has bargained away not only her individual claims against MWI, but also any claim for fees or costs in this action. Sanford "ha[s] retained no interest in shifting the costs of litigation, and thus,

---

[4]The only claims expressly excluded from the release are claims "against any non-West entity (specifically including MWI) relating to enrollment in one or more upsells that are *outside of*" the joint marketing agreements at issue in Sanford's state-court action. Notably, the settlement agreement does not purport to release claims against MWI arising out of the *same* joint marketing agreements, and indeed required Sanford to seek dismissal in this action of "any allegations and claims against any party, including MWI, relating to or seeking recovery for" such claims.

[her] case is plainly moot." *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 705 (6th Cir. 2009). Because Sanford no longer has any cognizable interest in the suit, she must be dismissed from the appeal. *See Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1056 (9th Cir. 2007) (per curiam).

There is no contention that the claims of the other named plaintiffs, the Smiths, have been satisfied. Therefore, we conclude that the Smiths may continue in this suit, and we proceed to the merits of the Smiths' claims only.

## III

We next consider whether the district court erred in denying the Smiths' motion for leave to amend the complaint to add claims alleging violations of RICO, 18 U.S.C. § 1962(c) and (d). Where, as here, the district court denies leave to amend on futility grounds, we will uphold such denial if "it is clear, upon *de novo* review, that the complaint would not be saved by any amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## A

**[3]** Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To state a claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. " *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc). A " 'pattern' . . . requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). " '[R]acketeering activity' is any act indictable under several provisions of Title 18 of the United States Code, and includes

the predicate acts of mail fraud, wire fraud and obstruction of justice." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).

**[4]** In the proposed Third Amended Complaint, the Smiths alleged the predicate acts of wire and mail fraud, including the reading of deceptive sales scripts over the telephone and the mailing of deceptive membership kits. Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986). Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be averred generally." Consequently, "[t]he only aspects of wire [or mail] fraud that require particularized allegations are the factual circumstances of the fraud itself." *Odom*, 486 F.3d at 554.

"Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Id.* Accordingly, "[t]o avoid dismissal for inadequacy under Rule 9(b), [the] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (internal quotation marks omitted).

**[5]** The Smiths failed to allege which of them made any of the telephone calls to purchase the various bait products and,

thus, who was a party to the alleged misrepresentations. At oral argument, their counsel conceded that the Smiths had no recollection of who made the calls. While we have occasionally relaxed the particularity requirement where "plaintiffs cannot be expected to have personal knowledge of the relevant facts," *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993), here, it is not unreasonable to expect the Smith who placed the phone calls to have personal knowledge of the relevant facts. We therefore conclude that the Smiths cannot satisfy Rule 9(b)'s particularity requirement with respect to their claims of wire fraud. *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (holding that a complaint did not satisfy Rule 9(b) because it "d[id] not specify *which* plaintiff received which prospectus, or *which* plaintiff(s) made purchases through the stockbroker defendants" (emphases added)).[5]

**[6]** As to mail fraud, the proposed Third Amended Complaint generally alleges that MWI mailed membership kits to consumers after they called to purchase the bait products, and that such kits were designed to look like junk mail so that consumers would unwittingly throw them away without canceling their memberships. However, because the Smiths failed to allege any specific mailings, they once again failed to satisfy Rule 9(b)'s particularity requirement. *See Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

**[7]** The Smiths cannot make any additional factual allegations to supplement their deficient RICO claims without conducting discovery. Although in some cases, discovery may be appropriate where evidence of fraud is exclusively in the defendant's possession, *see United States ex rel. Lee v. Smith-*

---

[5]Because we conclude that the failure to plead who placed the telephone calls was insufficient under Rule 9(b), we need not decide whether the failure to allege the identity of the telemarketing entity that took the calls or the bait products purchased in each transaction was also insufficient.

*Kline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001), here, the deficiencies stem from the Smiths' inability to remember phone calls *they* made or mailings *they* received. Because no amendment would allow the Smiths to plead the factual circumstances of the alleged fraud with the requisite level of particularity, we conclude that the district court did not err in denying as futile the Smiths' motion for leave to amend the complaint to add a RICO claim under section 1962(c).

B

Section 1962(d) of RICO provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Because we conclude that the section 1962(c) claim cannot be saved by amendment, it follows that the section 1962(d) claim also cannot be saved. Denial of leave to amend the complaint to add this claim was therefore proper.

IV

**[8]** We next consider whether the district court erred in dismissing the claims under the Unordered Merchandise Statute on the ground that the membership kits were not "merchandise."⁶ The statute prohibits "the mailing of unordered

---

⁶MWI argues that we should affirm the district court on the alternative ground that there is no private right of action under the Unordered Merchandise Statute. Although we recognized such a private right of action in *Kipperman v. Academy Life Insurance Co.*, 554 F.2d 377 (9th Cir. 1977), MWI contends that an intervening Supreme Court decision, *Alexander v. Sandoval*, 532 U.S. 275 (2001), has undermined the rationale of *Kipperman*. *See Wisniewski v. Rodale*, 510 F.3d 294, 308 (3d Cir. 2007) (deem-

merchandise," which is defined as "merchandise mailed without the prior expressed request or consent of the recipient." 39 U.S.C. § 3009(a), (d). But it does not define "merchandise." When interpreting a statute, we must give its terms "their ordinary and plain meaning," and may follow the common practice of consulting dictionaries to determine how the terms were defined at the time the statute was adopted. *Johnson v. Aljian*, 490 F.3d 778, 780 (9th Cir. 2007). The Unordered Merchandise Statute was enacted as part of the Postal Reorganization Act of 1970, Pub. L. No. 91-375, 84 Stat. 749 (1970). Accordingly, it is appropriate to turn to the *Black's Law Dictionary* edition that was current in 1970. There, "merchandise" is defined as "[a]ll commodities which merchants usually buy and sell, whether at wholesale or retail; wares and commodities such as are ordinarily the objects of trade and commerce." *Black's Law Dictionary* 1138 (4th ed. 1951). "Commodities" are "[m]ovable articles of value; things that are bought and sold." *Id.* at 342. "Merchandise," therefore, refers to movable articles of value that are bought and sold by merchants.

**[9]** But MWI did not sell membership *kits*; it sold memberships. The membership kits were merely incidental to the sale of the memberships, providing prospective members with instructions on how to use their free trial memberships (*i.e.*, by "contact[ing] defendant MWI either by telephone or via

___

ing *Kipperman* "inconsistent" with *Sandoval*). Therefore, MWI invites us to overrule *Kipperman*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that a three-judge panel may overrule another three-judge panel "where intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority").

We decline the invitation. "The question whether a [private] cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided." *Burks v. Lasker*, 441 U.S. 471, 476 n.5 (1979). Because we dispose of the Unordered Merchandise Statute claim on other grounds, we leave the question of *Kipperman*'s continuing vitality for another day.

the Internet, and obtain[ing] certificates through MWI"). The membership kits were therefore informational materials, not valuable objects of trade. The Smiths conceded as much when they alleged in the proposed Third Amended Complaint that the membership kits "are mailed out bulk rate indicating the *lack of value* of the material." (emphasis added).

**[10]** Nor are the memberships themselves merchandise. While they provided members with an opportunity to buy merchandise at a discount, such intangible opportunities are not in themselves merchandise. *See Weinberg v. City of Chicago*, 310 F.3d 1029, 1035 (7th Cir. 2002) ("Merchandise is generally considered as any *tangible* item held out for sale." (emphasis added)); *cf. Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 304 (7th Cir. 1986) ("The United Consumers Club sells both memberships and merchandise. Those who purchase memberships then may buy the merchandise.").

**[11]** Because nothing MWI allegedly mailed to the Smiths fits within the definition of "merchandise," we conclude that the district court properly dismissed their claims under the Unordered Merchandise Statute.

V

The Smiths next argue that the district court erred in dismissing the EFTA claims.

**[12]** The EFTA creates a "framework [of] rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). The Act applies to electronic fund transfers from a "consumer account," which is defined as a "demand deposit, savings deposit, or other asset account." *Id.* § 1693a(2). Consequently, it does not apply to credit-based transactions. *Cf. Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1328 (7th Cir. 1997) (noting that the EFTA governs "electronic cash transactions" and is "void of any credit reference or requirement"). The

Smiths concede that only their credit cards were charged by MWI, and that the EFTA is therefore inapplicable to their transactions with MWI. They nevertheless contend that they should be allowed to represent putative class members whose debit cards were charged.

**[13]** When a named plaintiff has no cognizable claim for relief, "she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail." *Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003); *see also Boyle v. Madigan*, 492 F.2d 1180, 1182 (9th Cir. 1974) ("Until [the named plaintiffs] can show themselves aggrieved in the sense that they are entitled to the relief sought, there is no occasion for the court to wrestle with the problems presented in considering whether the action may be maintained on behalf of the class."). Here, because the Smiths lack a cognizable EFTA claim, dismissal of their individual claims was proper, and they cannot represent an EFTA class.

The Smiths contend that even if they cannot represent an EFTA class, the district court should have permitted a debit purchaser to intervene to represent the class.[7] However, where, as here, the original named plaintiffs fail to state a cognizable claim from the outset, intervention is not required. *See Lierboe*, 350 F.3d at 1023; *see also Lidie v. California*, 478 F.2d 552, 555 (9th Cir. 1973) ("[W]here the original plaintiffs were never qualified to represent the class, a motion to intervene represents a back-door attempt to begin the action anew, and need not be granted.").

## VI

**[14]** Finally, the Smiths argue that the district court erred

---

[7]Although no motion to intervene was ever filed, the district court noted that it "would not grant a motion to intervene at this point even if the proceedings were stayed to allow such a motion to be filed."

in declining to exercise supplemental jurisdiction over their state-law claims. A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000). Because we conclude that the district court properly dismissed all of the federal-law claims and the balance of factors does not tip in favor of retaining the state-law claims,[8] we cannot say that the district court abused its discretion in dismissing the state-law claims without prejudice.

## VII

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**

---

[8]Indeed, these state-law claims have already been re-filed by the Smiths and numerous putative class members in various states, making any exercise of supplemental jurisdiction at this point a waste of judicial resources. *See In re Vertrue Inc. Mktg. & Sales Practices Litig.*, No. 09-75000, 2010 WL 1539976, at *1 (N.D. Ohio Apr. 16, 2010) (listing actions consolidated by the Judicial Panel on Multidistrict Litigation), *appeal docketed*, No. 10-3928 (6th Cir. Aug. 5, 2010).