NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 15 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| SUSAN DOW, individually and on behalf of all others similarly situated, | No. 23-2641 |
| Plaintiff-Appellant, | D.C. No. 1:20-cv-00031-SPW |
| v. | |
| SAFECO INSURANCE COMPANY OF AMERICA, a Liberty Mutual Company, | MEMORANDUM* |
| Defendant-Appellee, | |
| and | |
| LIBERTY MUTUAL INSURANCE COMPANY; LIBERTY MUTUAL FIRE INSURANCE COMPANY, | |
| Defendants. | |

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Argued and Submitted October 21, 2024
San Francisco, California

Before:  GILMAN,** WARDLAW, and COLLINS, Circuit Judges.

In this putative class action, Plaintiff Susan Dow appeals the district court's

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

summary judgment dismissing her breach-of-contract lawsuit against Defendant Safeco Insurance Company of America ("Safeco"), which had issued a landlord-protection insurance policy on a home owned by Dow. Dow also appeals the district court's order decertifying a plaintiff class. We affirm.

## I

This lawsuit arises from an August 2018 hailstorm that damaged the siding, garage doors, windows, and roof of the insured home. After the storm, Dow filed a claim with Safeco, which paid her an initial payment of $13,758.36, representing the "actual cash value" ("ACV") associated with the damage to the roof, gutters, and the painting on the siding. The policy defines ACV to mean, in the context of "economically repairable" damage, "the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence." Although the ACV is calculated based on the estimated cost of repairs less depreciation, the policy did not obligate Dow to use the ACV payment to make the repairs. However, if she did choose to make the repairs, she was eligible to receive a further payment, representing "the difference between [ACV] and replacement cost," once "the damaged or destroyed property has actually been repaired or replaced." The parties refer to this additional payment as reflecting the "repair cost value" ("RCV"). Dow sought such an additional RCV payment in connection with the repair of the home's roof.

Specifically, after her roof was repaired, Dow received an invoice on May 1, 2019 from her general contractor for $27,345.88, which she then submitted to Safeco for payment. The parties agree that, of the total payments made by Safeco for the repair of the home, "$28,623.10 was paid for repairs to the [home's] roof." Thus, Safeco paid more than the full amount of the May 1, 2019 invoice that had been submitted after completion of the roof repairs. The parties agreed below that that invoice included—and Safeco thus paid—$4,557.65 as "general contractor overhead and profit" ("GCOP") for the roof repairs.

For reasons that are not entirely clear from the record, Safeco provided subsequent "estimates" in connection with the remaining repairs of the home that included a line for the already-completed roof work. In particular, the estimate that Safeco issued in September 2019 listed a total RCV for the roof of "$28,623.98" (which is close to the total amount Safeco had paid for the roof). Dow contends that this subsequent "estimate" of the roof repair costs should have resulted in a further *ACV payment*, which would be based on that estimate and increased by 20% to reflect a payment of GCOP for the general contractor. Based on this assertion, Dow brought a putative class action against Safeco in Montana state court for state-law breach of contract and for a violation of the Montana Unfair Trade Practices Act ("UTPA"). After this case was removed to federal court, the district court certified a plaintiff class. Later in the proceedings, however, the

3

district court granted summary judgment against Dow on her individual claims, and after class counsel failed to find a new class representative within 60 days, the district court decertified the class for lack of a representative.

We have jurisdiction over Dow's timely appeal. 28 U.S.C. § 1291. We review the grant of summary judgment *de novo*, *Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008), and the decertification order under the abuse-of-discretion standard, *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. SW, Inc.*, 926 F.3d 528, 531 (9th Cir. 2019). We "may affirm on any ground supported in the record." *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024); *see also Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 967 (9th Cir. 2020) (same for the denial of class certification).

## II

The district court correctly granted summary judgment against Dow on her breach-of-contract claim. "The essential elements of a breach of contract claim are: (1) a valid and enforceable contract; (2) breach of an express or implied contract duty or obligation; and (3) resulting contract damages." *Kostelecky v. Peas in a Pod LLC*, 518 P.3d 840, 859 ¶ 41 (Mont. 2022). Dow cannot satisfy the last two elements of this test.

Dow contends that, even after the roof repairs were fully completed by May 1, 2019 for $28,623.10 (which included $4,557.65 in GCOP), the issuance of a

4

subsequent "estimate" for roof repairs in September 2019 (equivalent, essentially, to what was already paid) entitles her to an *ACV* payment based on that "estimate," together with a 20% payment for GCOP. That is incorrect. Under the policy, ACV is defined as "the cost of materials and labor that *would be* necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence" (emphasis added). The use of the conditional phrase "would be" confirms that the calculation of ACV is based on early estimates prepared *before* the work has been completed. Dow's position that ACV payments must be calculated based on much later post-completion "estimates" of what the *completed* repairs "*would*" cost makes no sense.

Moreover, Dow's position ignores the language and structure of the policy provision that explains the amounts Safeco is obligated to pay and, in particular, the relationship between ACV and RCV. The policy plainly contemplates that ACV will be calculated, in advance of completion of the repairs, based on a then-prospective estimate of the cost of the repairs, minus amounts for depreciation. Even if the insured receives such an ACV payment, she may later seek a further RCV payment reflecting "the difference between actual cash value and replacement cost," but only after completing the repairs. That replacement cost may not exceed "the amount actually and necessarily incurred to repair or replace the damaged dwelling." These terms confirm that ACV is calculated based on

5

prospective estimates, and that when the actual repair costs are subsequently known from having completed the repairs, any shortfall in the estimate may be recovered, as may the earlier deduction for depreciation. The language thus expressly contemplates that, due to the deduction for depreciation and the potential shortfall in the prospective estimate, ACV will typically be lower than RCV. Of course, as Dow notes, if the ACV estimate was in fact too high and the total RCV, after the completion of the repairs, ends up being less than ACV (even taking into account that depreciation is not deducted from RCV), then the insured may keep the entire pre-completion ACV payment that had been based on the too-high pre-completion estimate. But nothing in the policy language suggests that, long after an ACV payment has been made, the actual costs of the completed repairs may be retroactively plugged back into the ACV formula, as if it were a prospective and unadjusted estimate, thereby generating a new ACV payment obligation (including an additional GCOP markup) based on such post-completion "estimates."

Because Safeco paid ACV based on a pre-completion estimate and then paid the full RCV (including GCOP and with no depreciation), Safeco did not breach the policy or cause any damage to Dow.

### III

The district court also correctly granted summary judgment on Dow's UTPA claim. As the Montana Supreme Court has recognized, § 33-18-242(6) of the

Montana Code Annotated "provides the insurer with an affirmative defense whereby it may avoid liability in a UTPA action if it 'had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue.'" *Lorang v. Fortis Ins.*, 192 P.3d 186, 210 ¶ 116 (Mont. 2008) (quoting MONT. CODE ANN. § 33-18-242(5) (2008)).[1]  Here, as the foregoing analysis demonstrates, Safeco "had a reasonable basis in law to interpret its [policy] in the manner it did" in refusing to provide Dow additional payments.  *State Farm Mut. Auto. Ins. v. Freyer*, 312 P.3d 403, 423 ¶¶ 58–59 (Mont. 2013).  Accordingly, the statutory affirmative defense forecloses Dow's UTPA claim.

## IV

The district court did not abuse its discretion in decertifying the class in this case.  The district court correctly held that because Dow lacked a viable individual claim, she could not represent the class.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560–61 (9th Cir. 2010).  On this basis alone, the district court was permitted to decertify the class.  *See NEI*, 926 F.3d at 533.  In any event, the district court gave class counsel ample opportunity to find an alternative class representative, and class counsel was unsuccessful in his efforts.

**AFFIRMED.**

---

[1] The affirmative defense was originally codified in MONT. CODE ANN. § 33-18-242(5), but since May 2023, it has been codified at MONT. CODE ANN. § 33-18-242(6).  *See* 2023 Mont. Laws Ch. 430, § 2.